## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC** § § § | |
| § | |
| **PLAINTIFFS** § | |
| **v.** § | **Civil Action No. 2:13-cv-00900-JRG** |
| § | |
| **SAMSUNG ELECTRONICS CO., LTD,** § | |
| **SAMSUNG ELECTRONICS AMERICA,** § | **JURY TRIAL REQUESTED** |
| **INC., SAMSUNG** § | |
| **TELECOMMUNICATIONS AMERICA,** § | |
| **LLC** | |
| **DEFENDANTS.** | |

### PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S (First) AMENDED COMPLAINT

Plaintiffs Rockstar Consortium US LP ("Rockstar") and MobileStar Technologies LLC ("MobileStar") file this Amended Complaint for patent infringement under 35 U.S.C. § 271 and in support thereof would respectfully show the Court the following:

### PARTIES

1.      Plaintiff Rockstar Consortium US LP ("Rockstar") is a limited partnership organized and existing under the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

2.      Plaintiff MobileStar Technologies LLC ("MobileStar") is a subsidiary of Rockstar and is a limited liability corporation organized and existing under

the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

3.          Upon information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of the Republic of Korea with its principal place of business at 416, Maetan 3-dong, Yeongtong-gu, Suwon-si, Gyeonggi-do 443-742, South Korea.

4.          Upon information and belief, Defendant Samsung Electronics America, Inc. ("SEA") is a subsidiary of SEC and is a corporation organized and existing under the laws of the State of New York.  Samsung Electronics America, Inc. maintains its principal place of business at 85 Challenger Road, Ridgefield Park, NJ 07660.

5.          Upon information and belief, Defendant Samsung Telecommunications America, LLC is a subsidiary of SEC and is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business at 1301 East Lookout Drive, Richardson TX 75082.

6.          Upon information and belief, Defendant Google, Inc. ("Google") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043.

## BACKGROUND FACTS

7.          Nortel Networks, a previous assignee of the patents-in-suit, conducted an auction for Nortel's patent portfolio.. The auction included the patents asserted herein.

8.          During the various auction dates Google, among others, bid for Nortel's portfolio.

9.          Google made its first bid for the Nortel patent portfolio on April 4, 2011.  (*See* http://googleblog.blogspot.com/2011/04/patents-and-innovation.html).

10.          Google was aware of the patents asserted herein at the time of its initial bid.

11.          Google placed an initial bid of $900,000,000 for the patents-in-suit and the rest of the Nortel portfolio. Google subsequently increased its bid multiple times, ultimately bidding as high as $4.4 billion. That price was insufficient to win the auction, as a group led by the current shareholders of Rockstar purchased the portfolio for $4.5 billion.

12.          Despite losing in its attempt to acquire the patents-in-suit at auction, Google has infringed and continues to infringe the patents-in-suit, including, but not limited to, the sale and offer for sale of its "Google Nexus" line of devices in the United States, including in this District.

13.    The Nexus devices include, but are not limited to, the Nexus 5, Nexus 7, Nexus 10, and Galaxy Nexus.  On information and belief, the Nexus 10 and Galaxy Nexus are manufactured by Samsung.

## JURISDICTION AND VENUE

14.    This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 271.  This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. § 1338.

15.    Venue is proper in this Court pursuant to 28 U S.C. §§ 1391 and 1400(b).

16.    This Court has personal jurisdiction over Defendants Samsung Electronics Co., Ltd, Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung"). Samsung has conducted and does conduct business within the State of Texas.  Samsung, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products (including its infringing products) and/or services in the United States, the State of Texas, and the Eastern District of Texas.  Samsung, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These

infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.  Samsung has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

17.         This Court has personal jurisdiction over Defendant Google. Google has conducted and does conduct business within the State of Texas.  Google, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products (including its "Nexus" line of products) and/or services in the United States, the State of Texas, and the Eastern District of Texas. Google, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.  Google has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

## ASSERTED PATENTS

18.         On November 17, 1998, U.S. Patent No. 5,838,551 ("the '551 Patent") entitled "Electronic Package Carrying an Electronic Component and Assembly of Mother Board and Electronic Package" was duly and legally issued with Yee-Ning Chan as the named inventor after full and fair examination.  Rockstar owns all rights,

title, and interest in and to the '551 Patent and possesses all rights of recovery under the '551 Patent.  MobileStar is the exclusive licensee of the '551 Patent.

19.    On March 14, 2000, U.S. Patent No. 6,037,937 ("the '937 Patent") entitled "Navigation Tool for Graphical User Interface" was duly and legally issued with Brian Finlay Beaton, Colin Donald Smith, and Bruce Dale Stalkie as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '937 Patent and possesses all rights of recovery under the '937 Patent.

20.    On October 3, 2000, U.S. Patent No. 6,128,298 ("the '298 Patent") entitled "Internet Protocol Filter" was duly and legally issued with Bruce Anthony Wootton and William G. Colvin as the named inventors after full and fair examination.  Rockstar owns all rights, title, and interest in and to the '298 Patent and possesses all rights of recovery under the '298 Patent.  MobileStar is the exclusive licensee of the '298 Patent.

21.    On December 25, 2001, U.S. Patent No. 6,333,973 ("the '973 Patent") entitled "Integrated Message Center" was duly and legally issued with Colin Donald Smith and Brian Finlay Beaton as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '973 Patent and possesses all rights of recovery under the '973 Patent.

22.    On October 8, 2002, U.S. Patent No. 6,463,131 ("the '131 Patent") entitled "System and Method for Notifying a User of an Incoming Communication Event" was duly and legally issued with Marilyn French-St. George, Mitch A. Brisebois and Laura A. Mahan as the named inventors after full and fair examination.  MobileStar

owns all rights, title, and interest in and to the '131 Patent and possesses all rights of recovery under the '131 Patent.

23. On July 20, 2004, U.S. Patent No. 6,765,591 ("the '591 Patent") entitled "Managing a Virtual Private Network" was duly and legally issued with Matthew W. Poisson, Melissa L. Desroches, and James M. Milillo as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '591 Patent and possesses all rights of recovery under the '591 Patent.

24. On August 30, 2005, U.S. Patent No. 6,937,572 ("the '572 Patent") entitled "Call Trace on a Packet Switched Network" was duly and legally issued with Brian B. Egan and Milos Vodsedalek as the named inventors after full and fair examination.  Mobilestar owns all rights, title, and interest in and to the '572 Patent and possesses all rights of recovery under the '572 Patent.

## GENERAL ALLEGATIONS

25. Samsung has directly and indirectly infringed and continues to directly and indirectly infringe each of the '551, '937, '298, '973, '131, '591, and '572 Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), (c), and/or (f), including but not necessarily limited to one or more of making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into this District and elsewhere in the United States, certain mobile communication devices having a version (or an adaption thereof) of Android operating system ("Samsung Mobile Communication Devices").

26. Samsung is doing business in the United States and, more particularly, in the Eastern District of Texas by making, using, selling, importing, and/or

offering for sale Samsung Mobile Communication Devices, including but not limited to Samsung's Galaxy family of smart phones, including the Galaxy S III and Captivate (Galaxy S), and its Galaxy family of tablets, including the Galaxy Tab 8.9, and other products that infringe the patent claims involved in this action or by transacting other business in this District.

27.        Google has directly and indirectly infringed and continues to directly and indirectly infringe each of the '937, '131, and '591 Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), (c), and/or (f), including but not necessarily limited to one or more of making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into this District and elsewhere in the United States, certain mobile communication devices having a version (or an adaption thereof) of Android operating system ("Google Mobile Communication Devices"), including Google's Nexus 5, Nexus 7, Nexus 10, and Galaxy Nexus devices ("Google Nexus Devices").  .

28.        Google is doing business in the United States and, more particularly, in the Eastern District of Texas by making, using, selling, importing, and/or offering for sale Google Mobile Communication Devices, including but not limited to the Google Nexus Devices and other products that infringe the patent claims involved in this action or by transacting other business in this District.

29.        On information and belief, Google is a customer of one or more of one or more of Samsung Electronics Co., Ltd, Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

30.        More specifically, and on information and belief, one or more of Samsung Electronics Co., Ltd, Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC serve as a manufacturer of the Google Nexus 10 and Galaxy Nexus tablet.

31.        On information and belief, Google uses, sells, and offers for sale at least Nexus 10 devices in the United States, including in this District.  The Nexus 10 and Galaxy Nexus device include the Android operating system.

32.        Google also uses, sells, and offers for sale Nexus 5 and Nexus 7 devices in the United States, including in this District.[1]  The Nexus 5 and Nexus 7 include the Android operating system.

**COUNT ONE**
**PATENT INFRINGEMENT BY SAMSUNG**

33.        Plaintiffs incorporate by reference paragraphs 1-32 as if fully set forth herein.  As described below, Samsung has infringed and/or continues to infringe the '551, '937, '298, '131, '591, and '572 Patents.

34.        At least the Samsung Mobile Communication Devices infringe at least claim 1 of the '551 Patent.  Samsung makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these products and thus directly infringes one or more claims of the '551 Patent, including at least claim 1.

---

[1] On information and belief, one or more of LG Electronics Inc.,LG Electronics U.S.A., Inc., and LG Electronics MobileComm U.S.A., Inc.  (collectively "LGE") is an OEM for Google's Nexus 5 device, and one or both of ASUSTeK Computer, Inc. and ASUS Computer International, Inc. (collectively, "ASUS") is an OEM for Google's Nexus 7 device.  Rockstar has brought actions for patent infringement against LGE and Asus in this District on the '551, '937, '298, '973, '131, '591, and '572 Patents.

35.        Samsung indirectly infringes the '551 patent by inducing infringement by others, such as resellers, of at least claim 1 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of the Samsung Mobile Communication Devices.  Samsung had actual notice of the '551 Patent at least by October 15, 2012, in view of a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

36.        Samsung's affirmative acts of selling Samsung Mobile Communication Devices, causing the Samsung Mobile Communication Devices to be manufactured and distributed, and providing instruction manuals for Samsung Mobile Communication Devices induced Samsung's manufacturers and resellers to make or use Samsung Mobile Communication Devices in their normal and customary way to infringe the '551 patent.  Through its manufacture and sales of Samsung Mobile Communication Devices, Samsung specifically intended its resellers and manufacturers to infringe the '551 patent; further, Samsung was aware that these normal and customary activities would infringe the '551 patent.  Samsung performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '551 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

37.        Accordingly, a reasonable inference is that Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '551 Patent in the United States because Samsung has knowledge of the '551 Patent and Samsung actually induces others, such as resellers and end-use

10

customers, to directly infringe the '551 patent, by using, selling, exporting, supplying and/or distributing, within the United States, Samsung Mobile Communication Devices for resale to others, such as resellers and end-use customers. Samsung knew or should have known that such actions would induce actual infringement.

38.     Samsung indirectly infringes the '551 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices. Samsung had actual notice of the '551 Patent at least by October 15, 2012, in view of a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

39.     Samsung Mobile Communication Devices include at least one electronic package comprising a component that is located between an EMI shield and a ground member for performing shielding operations. The EMI shield is incorporated into the electronic package, which is then mounted to a circuit board in Samsung Mobile Communication Devices, and on information and belief, the electronic component does not function in an acceptable manner absent the EMI shielding. Furthermore, the electronic package incorporating the EMI shield does not operate in isolation, but is designed to operate within the Mobile Communication Device, and absent the EMI shielding of the electronic component, Samsung Mobile Communication Devices would not function in an acceptable manner.

40.     A reasonable inference to be drawn from the facts set forth is that the EMI shielded electronic package in Samsung Mobile Communication Devices is

especially made or especially adapted to operate in a Samsung Mobile Communication Device as an EMI shield.

41.       A reasonable inference to be drawn from the facts set forth is that the EMI shielded electronic package is not a staple article or commodity of commerce and that the use of the EMI shielded electronic package is required for operation of Samsung Mobile Communication Devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

42.       The EMI shielded electronic package in Samsung Mobile Communication Devices are each a material part of the invention of the '551 patent and are especially made for the infringing manufacture, sale, and use of Samsung Mobile Communication Devices.  Samsung Mobile Communication Devices, including the EMI shielded electronic package, are especially made or adapted as an electronic package that infringes the '551 patent.  Because the sales and manufacture of Samsung Mobile Communication Devices including the EMI shielded electronic package infringe the '551 patent, Samsung's sales of its infringing products have no substantial non-infringing uses.

43.       Accordingly, a reasonable inference is that Samsung offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Samsung provides to others Samsung Mobile Communication Devices with distinct and separate

components, including hardware components, which have no substantial non-infringing uses.

44.        At least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support Gallery, Email, Maps and Browser functionality, infringe at least claim 13 of the '937 Patent. Samsung makes, uses, tests, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 13 of the '937 Patent.

45.        Samsung indirectly infringes the '937 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Samsung Mobile Communication Devices. Samsung received actual notice of the '937 Patent at least by September 3, 2009 from a communication from Rockstar, and/or its predecessors-in-interest, to Samsung, and also received knowledge as of the date this lawsuit was filed.

46.        Samsung's affirmative acts of selling Samsung Mobile Communication Devices, causing the Samsung Mobile Communication Devices to be manufactured, and providing instruction manuals for Samsung Mobile Communication Devices induced Samsung's manufacturers and resellers to make or use the Samsung Mobile Communication Devices in their normal and customary way to infringe the '937 patent. Through its manufacture and sales of Samsung Mobile Communication Devices, Samsung specifically intended its resellers and manufacturers to infringe the '937 patent;

13

further, Samsung was aware that these normal and customary activities would infringe the '937 patent. Samsung performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

47.     Accordingly, a reasonable inference is that Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 patent in the United States because Samsung has knowledge of the '937 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Samsung Communication Devices for resale to others, such as resellers and end-use customers. Samsung knew or should have known that such actions would induce actual infringement.

48.     The use of at least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support Gallery, Email, Maps and Browser functionality as intended by Samsung infringes at least method claim 1 of the '937 Patent. Samsung uses these products and thus directly infringes at least method claim 1 of the '937 Patent.

49.     In addition, Samsung provides at least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support Gallery, Email, Maps, and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 1 of the '937 Patent.

50.        Samsung indirectly infringes the '937 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Samsung Mobile Communication Devices.  Samsung received actual notice of the '937 Patent at least by September 3, 2009 in view of a communication from Rockstar, and/or its predecessors-in-interest, to Samsung, and also received knowledge as of the date this lawsuit was filed.

51.        Samsung provides at least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support Gallery, Email, Maps and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe the '937 Patent.  Through its manufacture and sales of Samsung Mobile Communication Devices, Samsung specifically intended its resellers and manufacturers to infringe the '937 patent.

52.        Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 Patent in the United States.  For example, Samsung provides instructions to resellers and end-use customers regarding the use and operation of Samsung's products in an infringing way.  Such instructions include at least "Samsung Captivate Mobile Phone User Manual" (available at http://downloadcenter.samsung.com/content/UM/201201/20120117231631844/ATT_i897_Captivate_English_User_Manual.pdf).  When resellers and end-use customers follow such instructions, they directly infringe the '937 Patent.  Samsung knows that by

providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '937 Patent.  Samsung thus knows that its actions induce the infringement.

53.        Samsung performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

54.        Samsung indirectly infringes the '937 patent, by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices.  Samsung received actual notice of the '937 Patent at least by September 3, 2009 in view of a communication from Rockstar and/or its predecessors-in-interest to Samsung, and also received knowledge as of the date this lawsuit was filed.

55.        Samsung Mobile Communication Devices include functionality that, inter alia, displays a navigable graphical user interface ("navigable GUI") that permits a user to manipulate and control the contents of the display to maximize the use of display real estate.   This navigable GUI is included in Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support at least the Gallery, Email, Maps, and Browser functionalities.  On information and belief, these functionalities cannot operate in an acceptable manner absent the navigable GUI, as it is included in every Samsung Mobile Communication Device.

56.        A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in Samsung Mobile Communication Devices is especially made or especially adapted to operate on a Samsung Mobile Communication Device as a navigable GUI that permits a user to manipulate or control the contents of the display to maximize the use of display real estate on the user's Samsung Mobile Communication Devices.

57.        A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in the Mobile Communication Device is not a staple article or commodity of commerce and that the use of the navigable GUI in Samsung Mobile Communication Devices is required for the operation of Samsung Mobile Communication Devices.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

58.        Samsung Mobile Communication Devices with the navigable GUI are each a material part of the invention of the '937 patent and are especially made for the infringing manufacture, sale, and use of Samsung Mobile Communication Devices. Samsung Mobile Communication Devices with the navigable GUI are especially made or adapted as a navigable GUI that infringes the '937 patent.   Because the sales and manufacture of Samsung Mobile Communication Devices with a navigable GUI infringes the '937 patent, Samsung's sales of its infringing products have no substantial non-infringing uses.

59.        Accordingly, a reasonable inference is that Samsung offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '937

17

patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Samsung provides to others, Samsung Mobile Communication Devices with distinct and separate components, including software components, which have no substantial non-infringing uses.

60.    At least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support the Mobile Hotspot functionality infringe at least claims 27 and 31 of the '298 Patent.  Samsung makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claims 27 and 31 of the '298 Patent.

61.    Samsung indirectly infringes the '298 patent by inducing infringement by others of at least claims 27 and 31, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Samsung Mobile Communication Devices.  Samsung received actual notice of the '298 Patent at least by July 29, 2012 from a communication from Rockstar, and/or its predecessors-in-interest, to Samsung, and also received knowledge as of the date this lawsuit was filed.

62.    Samsung's affirmative acts of selling Samsung Mobile Communication Devices, causing the Samsung Mobile Communication Devices to be manufactured, and providing instruction manuals for Samsung Mobile Communication Devices induced Samsung's manufacturers and resellers to make or use the Samsung

18

Mobile Communication Devices in their normal and customary way to infringe the '298 patent.  Through its manufacture and sales of Samsung Mobile Communication Devices, Samsung specifically intended its resellers and manufacturers to infringe the '298 patent; further, Samsung was aware that these normal and customary activities would infringe the '298 patent.  Samsung performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

63.      Accordingly, a reasonable inference is that Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '298 patent in the United States because Samsung has knowledge of the '298 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Samsung Communication Devices for resale to others, such as resellers and end-use customers.  Samsung knew or should have known that such actions would induce actual infringement.

64.      The use of at least Samsung Mobile Communication Devices that support the Mobile Hotspot functionality as intended by Samsung infringes at least method claims 14 and 24 of the '298 Patent.  Samsung uses these products and thus directly infringes at least method claims 14 and 24 of the '298 Patent.

65.      In addition, Samsung provides at least Samsung Mobile Communication Devices that support the Mobile Hotspot functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claims 14 and 24 of the '298 Patent.

19

66.        Samsung indirectly infringes the '298 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities of the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices in their intended use, including a customer's use of the Mobile Hotspot functionality.  Samsung received actual notice of the '298 Patent at least by July 29, 2012 from a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

67.        Samsung's affirmative acts of selling its Samsung Mobile Communication Devices and providing instruction manuals induced the end-users of Samsung Mobile Communication Devices to use Samsung Mobile Communication Devices in their normal and customary way to infringe the '298 patent at least through using Mobile Hotspot functionality.  Samsung also provides instructions, including at least "Verizon User Manual Samsung Galaxy S III" available on Samsung's website at http://www.samsung.com/us/support/owners/product/SCH-I535MBCVZW, for using the Mobile Hotspot functionality.  Through its sales of Samsung Mobile Communication Devices with Mobile Hotspot functionality, Samsung specifically intended the end-users of Samsung Mobile Communication Devices to infringe the '298 patent; further, Samsung was aware that the normal and customary use of Mobile Hotspot functionality would infringe the '298 patent.  Samsung also enticed its end-users to use the Mobile Hotspot functionality by providing instruction manuals and also providing Mobile Hotspot functionality.  Samsung performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '298

20

patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

68.      Accordingly, a reasonable inference is that Samsung actively induces infringement of the '298 Patent by others, such as resellers and end-use customers. Samsung specifically intends for others, including such as resellers and end-use customers, to directly infringe one or more claims of the '298 Patent in the United States because Samsung had knowledge of the '298 Patent, and Samsung actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Samsung Mobile Communication Devices in an infringing way. Such instructions include at least "Verizon User Manual Samsung Galaxy S III" available at http://www.samsung.com/us/support/owners/product/SCH-I535MBCVZW. When resellers and end-use customers follow such instructions, they directly infringe the '298 Patent. Samsung knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '298 Patent. Samsung thus knows that its actions induce the infringement.

69.      Samsung indirectly infringes the '298 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices in their intended use, including a customer's use of the Mobile Hotspot functionality. Samsung received actual notice of the '298 Patent at least by July 29, 2012 from a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

70.          Samsung Mobile Communication Devices with the Mobile Hotspot functionality allow wireless devices from a first, or private, network to connect to a second, or public, network such as the Internet.  The Mobile Hotspot functionality is designed to route data packets between wireless devices tethered to the Mobile Hotspot to nodes on a public network such as the Internet, and cannot function in a manner that does not utilize the Mobile Hotspot functionality available to Samsung Mobile Communication Devices.  Upon information and belief, the Mobile Hotspot functionality is designed to entice a user to access nodes in a second, or public, network such as the Internet.

71.          A reasonable inference to be drawn from the facts set forth is that the Mobile Hotspot functionality is especially made or especially adapted to operate on a mobile communication device for providing access for wireless devices in a first, or private, network to nodes in a second, or public, network.

72.          A reasonable inference to be drawn from the facts set forth is that the Mobile Hotspot functionality is not a staple article or commodity of commerce and that the use of the Mobile Hotspot functionality of Samsung Mobile Communication Devices is for interfacing first and second data communications networks, e.g., a private network and a public network such as the Internet.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

73.          Samsung Mobile Communication Devices with Mobile Hotspot functionality are each a material part of the '298 patent and especially made for the infringing use of the Mobile Hotspot functionality for interfacing private and public data communication networks.  Samsung Mobile Communication Devices with the Mobile

22

Hotspot functionality are especially made or adapted to provide access for wireless devices in a first, or private, network through the Mobile Communication Device, to nodes in a second, or public, network that perform or facilitate performance of the steps that infringe the '298 patent. Furthermore, Samsung provides user manuals describing the uses of Samsung Mobile Communication Devices that infringe the '298 patent. Because the sales and manufacture of Samsung Mobile Communication Devices with Mobile Hotspot functionality infringes the '298 patent, Samsung's sales of its infringement products have no substantial non-infringing uses.

74.        Accordingly, a reasonable inference is that Samsung offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing uses. Samsung provides to others, Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support Mobile Hotspot functionality. Samsung installs and configures Samsung Mobile Communication Devices with distinct and separate components, including software components, which are used only to perform the infringing method claims.

75.        At least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support an integrated notification message center functionality infringe at least claims 1 and 21 of the '973 Patent. Samsung makes, uses, sells, tests, uses, offers for sale, imports, exports, supplies

and/or distributes within the United States these devices and thus directly infringes one or more claims of the '973 patent, including at least claims 1 and 21.

76.        Samsung indirectly infringes the '973 patent by inducing infringement by others, such as resellers, of at least claims 1 and 21 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.   Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Samsung Mobile Communication Devices.  Samsung received actual notice of the '973 Patent at least by March 12, 2012 from a communication from Rockstar, and/or its predecessors-in-interest, to Samsung, and also received knowledge as of the date this lawsuit was filed.

77.        Samsung's affirmative acts of selling Samsung Mobile Communication Devices, causing the Samsung Mobile Communication Devices to be manufactured, and providing instruction manuals for Samsung Mobile Communication Devices induced Samsung's manufacturers and resellers to make or use the Samsung Mobile Communication Devices in their normal and customary way to infringe the '973 patent.  Through its manufacture and sales of Samsung Mobile Communication Devices, Samsung specifically intended its resellers and manufacturers to infringe the '973 patent; further, Samsung was aware that these normal and customary activities would infringe the '973 patent.  Samsung performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '973 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

78.        Accordingly, a reasonable inference is that Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or

24

more claims of the '973 patent in the United States because Samsung has knowledge of the '973 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Samsung Communication Devices for resale to others, such as resellers and end-use customers.  Samsung knew or should have known that such actions would induce actual infringement.

79.      The use of at least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support an integrated notification message center functionality as intended by Samsung infringes at least method claim 8 of the '973 Patent.  Samsung uses these devices within the United States and thus directly infringes one or more claims of the '973 patent, including at least claim 8.

80.      Samsung indirectly infringes the '973 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices.  Samsung received actual notice of the '973 Patent at least by March 12, 2012 in view of a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

81.      Samsung provides at least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support integrated notification message center functionality to others, such as resellers and end-use customers, in the United States who, in turn, use Samsung Mobile Communication

Devices to infringe at least method claim 8 of the '973 Patent. Through its manufacture and sales of Samsung Mobile Communication Devices, Samsung specifically intended its resellers and manufacturers to infringe the '973 patent.

82.         Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '973 Patent in the United States. For example, Samsung provides instructions to resellers and end-use customers regarding the use and operation of Samsung Mobile Communication Devices in an infringing way. Such instructions include at least "Samsung Captivate Mobile Phone User                   Manual"                 (available                 at http://downloadcenter.samsung.com/content/UM/201201/20120117231631844/ATT_i89 7_Captivate_English_User_Manual.pdf, accessed October 30, 2013). When resellers and end-use customers follow such instructions, they directly infringe the '973 Patent. Samsung knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '973 Patent. Samsung thus knows that its actions induce the infringement.

83.         Samsung performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '973 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

84.         Samsung indirectly infringes the '973 patent, by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices. Samsung received actual notice of the '973

Patent at least by March 12, 2012 from a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

85.    Samsung Mobile Communication Devices include functionality that, inter alia, displays an integrated notification message center contained in a single list.  The notification message center is designed to provide a user with a single list of notifications regardless of the types of messages (e.g., email, text, etc) on the user's Mobile Communication Device.  On information and belief, this functionality cannot operate in an acceptable manner absent the integrated notification message center, as it is included in every Samsung Mobile Communication Device.

86.    A reasonable inference to be drawn from the facts set forth is that the integrated message center in Samsung Mobile Communication Devices is especially made or especially adapted to operate on a Samsung Mobile Communication Device as an integrated notification message center that provides a user with notifications concerning different types of messages on the user's Mobile Communication Device.

87.    A reasonable inference to be drawn from the facts set forth is that the integrated notification message center in the Mobile Communication Device is not a staple article or commodity of commerce and that the use of the integrated notification message center in Samsung Mobile Communication Devices is required for operation of Samsung Mobile Communication Devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

88.    Samsung Mobile Communication Devices with the integrated notification message center are each a material part of the invention of the '973 patent and are especially made for the infringing manufacture, sale, and use of Samsung Mobile

27

Communication Devices.  Samsung Mobile Communication Devices, including the integrated notification message center, are especially made or adapted as an integrated notification message center that infringes the '973 patent.  Because the sales and manufacture of Samsung Mobile Communication Devices with an integrated notification message center infringes the '973 patent, Samsung's sales of its infringing products have no substantial non-infringing uses.

89.     Accordingly, a reasonable inference is that Samsung offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Samsung provides to others, Samsung Mobile Communication Devices with distinct and separate components, including software components, which have no substantial non-infringing uses.

90.     At least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support Message and Notification functionality infringe at least claim 1 of the '131 Patent.  Samsung makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 1 of the '131 Patent.

91.     Samsung indirectly infringes the '131 patent by inducing infringement by others, such as resellers, of at least claim 1 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the

result of activities performed by the manufacturers, resellers, and end-users of the Samsung Mobile Communication Devices.  Samsung received actual notice of the '131 Patent at least by November 30, 2012 from a communication from Rockstar, and/or its predecessors-in-interest, to Samsung, and also received knowledge as of the date this lawsuit was filed.

92.    Samsung's affirmative acts of selling Samsung Mobile Communication Devices, causing the Samsung Mobile Communication Devices to be manufactured, and providing instruction manuals for Samsung Mobile Communication Devices induced Samsung's manufacturers and resellers to make or use the Samsung Mobile Communication Devices in their normal and customary way to infringe the '131 patent.  Through its manufacture and sales of Samsung Mobile Communication Devices, Samsung specifically intended its resellers and manufacturers to infringe the '973 patent; further, Samsung was aware that these normal and customary activities would infringe the '131 patent.  Samsung performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

93.    Accordingly, a reasonable inference is that Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '131 patent in the United States because Samsung has knowledge of the '131 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Samsung Communication Devices for resale to others, such as resellers

and end-use customers.  Samsung knew or should have known that such actions would induce actual infringement.

94.    The use of at least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support Message and Notification functionality as intended by Samsung infringes at least method claim 5 of the '131 Patent.  Samsung uses these products and thus directly infringes at least method claim 5 of the '131 Patent.

95.    In addition, Samsung provides at least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support Message functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 5 of the '131 Patent.

96.    Samsung indirectly infringes the '131 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices in their intended use, including a customer's use of the Message and Notifications functionality.  Samsung received actual notice of the '131 Patent at least by November 30, 2012 in view of a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

97.    Samsung's affirmative acts of selling Samsung Mobile Communication Devices and providing instruction manuals induced the end-users of Samsung Mobile Communication Devices to use Samsung Mobile Communication

Devices in their normal and customary way to infringe the '131 patent at least through using Message and Notifications functionality. Samsung also provides instructions, including at least "Verizon Samsung Galaxy S III User Guide" available on Samsung's website at http://www.samsung.com/us/support/owners/product/SCH-I535MBCVZW, for using the Messaging and Notifications functionality. Through its sales of Mobile Communication Devices with Messaging and Notifications functionality, Samsung specifically intended the end-users of Samsung Mobile Communication Devices to infringe the '131 patent; further, Samsung was aware that the normal and customary use of the Message and Notifications functionality would infringe the '131 patent. Samsung also enticed its end-users to use the Messaging and Notifications functionality by providing instruction manuals. Samsung performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

98.      Accordingly, a reasonable inference is that Samsung actively induces infringement of the '131 Patent by others, such as resellers and end-use customers. Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '131 Patent in the United States because Samsung had knowledge of the '131 Patent, and Samsung actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Samsung Mobile Communication Devices in an infringing way. Such instructions include at least "Verizon Samsung Galaxy S III User Guide" available at http://www.samsung.com/us/support/owners/product/SCH-I535MBCVZW. When

resellers and end-use customers follow such instructions, they directly infringe the '131 Patent. Samsung knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '131 Patent. Samsung thus knows that its actions induce the infringement.

99.        Samsung indirectly infringes the '131 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices in their intended use, including a customer's use of the Messaging and Notification functionality. Samsung received actual notice of the '131 Patent at least by November 30, 2012 in view of a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

100.        Samsung's Message and Notification functionality receives and displays message of different types, such as a phone call, voice mail, text message, or email. The Message and Notification Services functionality is designed to notify the user of an incoming communication and to select the format of the message received and cannot function in a manner that does not utilize the messaging functionality available to Samsung Mobile Communication Devices. Upon information and belief, the Message and Notifications functionality is designed to entice a user to receive notifications of an incoming communication.

101.        A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality especially made or especially adapted to

32

operate on Samsung Mobile Communication Devices for notifying a user of an incoming communication.

102.        A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality is not a staple article or commodity of commerce and that the use of the Messaging and Notifications functionality of the Samsung Mobile Communication Devices is for notifying a user of an incoming communication.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

103.        Samsung Mobile Communication Devices with Messaging and Notifications functionality are each a material part of the '131 patent and especially made for the infringing use of the Messaging and Notification functionality to receive and display messages.  Samsung Mobile Communication Devices including the Messaging and Notification functionality, are especially made or adapted to notify a user of an incoming communication that perform or facilitate performance of the steps that infringe the '131 patent.  Furthermore, Samsung provides user manuals describing the uses of its Mobile Communication Devices that infringe the '131 patent.  Because the functionality provided by Samsung's Messaging and Notification to notify a user of an incoming communication infringes the '131 patent, Samsung's sales of its infringing products have no substantial non-infringing uses.

104.        Accordingly, a reasonable inference is that Samsung offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially

33

made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Samsung provides to others, Mobile Communication Devices with an operating system configured and installed by Samsung to support Message and Notification functionality.  Samsung installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

105.    At least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support VPN management functionality, including the Samsung Galaxy S III, infringe at least claims 1 and 8 of the '591 Patent.  Samsung makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claims 1 and 8 of the '591 Patent.

106.    The use of at least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support VPN management functionality as specified and intended by Samsung infringes at least claims 1 and 8 of the '591 Patent.  Samsung uses these products and thus directly infringes at least claims 1 and 8 of the '591 Patent.

107.    Samsung indirectly infringes the '591 patent by inducing infringement by others, such as resellers, of at least claims 1 and 8 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Samsung Mobile Communication Devices.  Samsung received actual notice of the '591 Patent at least by October 15, 2012 from a communication from Rockstar, and/or its

34

predecessors-in-interest, to Samsung, and also received knowledge as of the date this lawsuit was filed.

108.    Samsung's affirmative acts of selling Samsung Mobile Communication Devices, causing the Samsung Mobile Communication Devices to be manufactured, and providing instruction manuals for Samsung Mobile Communication Devices induced Samsung's manufacturers and resellers to make or use the Samsung Mobile Communication Devices in their normal and customary way to infringe the '591 patent.  Through its manufacture and sales of Samsung Mobile Communication Devices, Samsung specifically intended its resellers and manufacturers to infringe the '591 patent; further, Samsung was aware that these normal and customary activities would infringe the '591 patent.  Samsung performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

109.    Accordingly, a reasonable inference is that Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 patent in the United States because Samsung has knowledge of the '591 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Samsung Communication Devices for resale to others, such as resellers and end-use customers.  Samsung knew or should have known that such actions would induce actual infringement.

110.    In addition, Samsung provides at least its Mobile Communication Devices with an operating system configured and installed by Samsung to support VPN

management functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least claims 1 and 8 of the '591 Patent.

111.     Samsung indirectly infringes the '591 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices in their intended use, including a customer's use of the VPN management functionality.  Samsung received actual notice of the '591 Patent at least by October 15, 2012 from a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

112.     Samsung's affirmative acts of selling its Mobile Communication Devices and providing instruction manuals induced the end-users of Samsung Mobile Communication Devices to use Samsung Mobile Communication Devices in their normal and customary way to infringe the '591 patent at least through using VPN management functionality.  Samsung also provides instructions, including at least "Verizon Samsung Galaxy S III User Manual" available on Samsung's website at http://www.samsung.com/us/support/owners/product/SCH-I535MBCVZW, for using the VPN management functionality.  Through its sales of Samsung Mobile Communication Devices with VPN management functionality, Samsung specifically intended the end-users of Samsung Mobile Communication Devices to infringe the '591 patent; further, Samsung was aware that the normal and customary use of VPN management functionality would infringe the '591 patent.  Samsung also enticed its end-users to use

36

the VPN management functionality by providing instruction manuals.   Samsung performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

113.       Accordingly, it is a reasonable inference that Samsung actively induces infringement of the '591 Patent by others, such as resellers and end-use customers.   Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 Patent in the United States because Samsung had knowledge of the '591 Patent, and Samsung actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Samsung's products in an infringing way.   Such instructions include at least "Verizon Samsung Galaxy S III User Manual" available on Samsung's website at http://www.samsung.com/us/support/owners/product/SCH-I535MBCVZW.        When resellers and end-use customers follow such instructions, they directly infringe the '591 Patent.   Samsung knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '591 Patent.   Samsung thus knows that its actions induce the infringement.

114.       Samsung indirectly infringes the '591 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.   Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices in their intended use, including a customer's use of the VPN management functionality.   Samsung received actual notice of the '591

Patent at least by October 15, 2012 in view of a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

115.    Samsung's VPN management functionality facilitates management of VPNs.  The VPN management functionality is designed for management of VPNs and cannot function in a manner that does not utilize the VPN management functionality available to Samsung Mobile Communication Devices.    The VPN management functionality is designed upon information and belief to entice a user to manage VPNs.

116.    A reasonable inference to be drawn from the facts set forth is that the VPN functionality is especially made or especially adapted to operate on Samsung Mobile Communication Devices for providing VPN management functionality.

117.    A reasonable inference to be drawn from the facts set forth is that the VPN management functionality is not a staple article or commodity of commerce and that the use of the VPN management functionality of Samsung Mobile Communication Devices is for managing VPNs.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

118.    Samsung Mobile Communication Devices with VPN management functionality are each a material part of the invention of the '591 patent and especially made for the infringing use of the VPN functionality.  Samsung Mobile Communication Devices including the VPN management functionality, are especially made or adapted to provide VPN management functionality that perform or facilitate performance of the steps that infringe the '591 patent.    Furthermore, Samsung provides user manuals describing the uses of its Mobile Communication Devices that infringe the '591 patent. Because the functionality provided by Samsung's VPN management functionality

38

infringes the '591 patent, Samsung's sales of its infringing Mobile Communication Devices have no substantial non-infringing uses.

119.    Accordingly, a reasonable inference is that Samsung offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing uses. Samsung provides to others, Mobile Communication Devices with an operating system configured and installed by Samsung to support VPN management functionality. Samsung installs and configures on these products distinct and separate components, including software components, which are used only to infringe the '591 Patent.

120.    The use of at least Samsung Mobile Communication Devices with an operating system configured and installed by Samsung to support Location Services functionality, as intended by Samsung infringes at least method claim 17 of the '572 Patent. Samsung uses these Mobile Communication Devices and thus directly infringes at least method claim 17 of the '572 Patent.

121.    In addition, Samsung provides at least its Mobile Communication Devices with an operating system configured and installed by Samsung to support Location Services functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 17 of the '572 Patent.

122.        Samsung indirectly infringes by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices in their intended use, including a customer's use of the Location Services functionality.  Samsung received actual notice of the '572 Patent at least by May 2, 2012 in view of a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

123.        Samsung's affirmative acts of selling its Mobile Communication Devices and providing instruction manuals induced the end-users of Samsung Mobile Communication Devices to use Samsung Mobile Communication Devices in their normal and customary way to infringe the '572 patent at least through using Location Services functionality.  Samsung also provides instructions, including at least "GT-P7300 User Manual"        available        on        Samsung's        website        at http://downloadcenter.samsung.com/content/UM/201209/20120922095036620/GT-P7300_UM_Open_HongKong_Icecream_Eng_Rev.1.0_120817_Screen.pdf, for using the Location Services functionality.    Through its sales of Samsung Mobile Communication Devices with Location Services functionality, Samsung specifically intended the end-users of Samsung Mobile Communication Devices to infringe the '572 patent; further, Samsung was aware that the normal and customary use of Location Services would infringe the '572 patent.  Samsung also enticed its end-users to use the Location Services by providing instruction manuals.  Samsung performed the acts that constituted induced infringement, and would induce actual infringement, with the

knowledge of the '572 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

124.        Accordingly, a reasonable inference is that Samsung actively induces infringement of the '572 Patent by others, such as resellers and end-use customers.  Samsung specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '572 Patent in the United States because Samsung had knowledge of the '572 Patent, and Samsung actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Samsung's products in an infringing way.  Such instructions include at least "GT-P7300 User Manual" available on Samsung's website at http://downloadcenter.samsung.com/content/UM/201209/20120922095036620/GT-P7300_UM_Open_HongKong_Icecream_Eng_Rev.1.0_120817_Screen.pdf.        When resellers and end-use customers follow such instructions, they directly infringe the '572 Patent.  Samsung knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '572 Patent.  Samsung thus knows that its actions induce the infringement.

125.        Samsung indirectly infringes the '572 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Samsung Mobile Communication Devices in their intended use, including a customer's use of the Locations Services functionality.  Samsung received actual notice of the '572

41

Patent at least by May 2, 2012 in view of a Rockstar communication to Samsung, and also received knowledge as of the date this lawsuit was filed.

126.        Samsung's Location Services functionality provides call trace information, i.e., a geographic location of Samsung Mobile Communication Devices. The Location Services functionality is designed to notify the user of Samsung Mobile Communication Devices of call trace information, i.e., a geographic location of the Mobile Communication Devices, and cannot function in a manner that does not utilize the Location Services functionality available to the Mobile Communication Devices. Upon information and belief, the Location Services functionality is designed to entice a user to access call trace information.

127.        A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is especially made or especially adapted to operate on Samsung Mobile Communication Devices for obtaining call trace information, i.e., a geographic location of the Mobile Communication Devices.

128.        A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is not a staple article or commodity of commerce and that the use of the Location Services functionality of Samsung Mobile Communication Devices is for providing call trace information.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

129.        Samsung Mobile Communication Devices with Location Services functionality are each a material part of the '572 patent and especially made for the infringing use of the Location Services functionality to receive call trace information, i.e., a geographic location of the Mobile Communication Devices.    The Mobile

Communication Devices including the Location Services functionality are especially made or adapted to provide call trace information that perform or facilitate performance of the steps that infringe the '572 patent. Furthermore, Samsung provides user manuals describing the uses of its products that infringe the '572 patent. Because the functionality provided by Samsung's Location Services to obtain call trace information, i.e., a geographic location of the Mobile Communication Devices, infringes the '572 patent, Samsung's sales of its infringing products have no substantial non-infringing uses.

130.    Accordingly, a reasonable inference is that Samsung offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing uses. Samsung provides to others Mobile Communication Devices with an operating system configured and installed by Samsung to support Location Services functionality. Samsung installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

131.    Samsung's acts of infringement have caused damage to Rockstar and MobileStar. Rockstar and MobileStar are entitled to recover from Samsung the damages sustained by Rockstar and MobileStar as a result of Samsung's wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Samsung have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rockstar and

43

MobileStar for which there is no adequate remedy at law, and for which Rockstar and MobileStar are entitled to injunctive relief under 35 U.S.C. § 283.

132.        Samsung received actual notice of its infringement of the '551, '937, '298, '973, '131, '591, and '572 Patents through at least letters sent by Rockstar and/or its predecessors-in-interest, Nortel Networks Ltd. and/or Nortel Networks, Inc., to Samsung, and through meetings between employees of Rockstar and/or its predecessors-in-interest, Nortel Networks Ltd., or Nortel Networks Inc. and Samsung.  Samsung also has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

133.        Samsung has willfully infringed and/or does willfully infringe the '551, '937, '298, '973, '131, '591, and '572 Patents.

134.        Samsung's acts of infringement have caused damage to Rockstar and MobileStar.  Rockstar and MobileStar are entitled to recover from Samsung the damages sustained by Rockstar and MobileStar as a result of Samsung's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of Samsung have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rockstar and MobileStar for which there is no adequate remedy at law, and for which Rockstar and MobileStar are entitled to injunctive relief under 35 U.S.C. § 283.

## COUNT TWO
## PATENT INFRINGEMENT BY GOOGLE

135.        Plaintiffs incorporate by reference paragraphs 1-134 as if fully set forth herein.  As described below, Google has infringed and/or continues to infringe the '937, '131, and '591 Patents.

44

136.        At least Google Mobile Communication Devices with an operating system configured and installed by Google to support Gallery, Email, Maps and Browser functionality, infringe at least claim 13 of the '937 Patent.  Google makes, uses, tests, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 13 of the '937 Patent.

137.        Google indirectly infringes the '937 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Google Mobile Communication Devices.  Google received actual notice of the '937 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, and further has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

138.        Google's affirmative acts of selling Google Mobile Communication Devices, causing the Google Mobile Communication Devices to be manufactured, and providing instruction manuals for Google Mobile Communication Devices induced Google's manufacturers and resellers to make or use the Google Mobile Communication Devices in their normal and customary way to infringe the '937 patent. Through its manufacture and sales of Google Mobile Communication Devices, Google specifically intended its resellers and manufacturers to infringe the '937 patent; further, Google was aware that these normal and customary activities would infringe the '937 patent.  Google performed the acts that constitute induced infringement, and would

induce actual infringement, with knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

139.        Accordingly, a reasonable inference is that Google specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 patent in the United States because Google has knowledge of the '937 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Google Communication Devices for resale to others, such as resellers and end-use customers.  Google knew or should have known that such actions would induce actual infringement.

140.        The use of at least Google Mobile Communication Devices with an operating system configured and installed by Google to support Gallery, Email, Maps and Browser functionality as intended by Google infringes at least method claim 1 of the '937 Patent.  Google uses these products and thus directly infringes at least method claim 1 of the '937 Patent.

141.        In    addition,    Google    provides    at    least    Google    Mobile Communication Devices with an operating system configured and installed by Google to support Gallery, Email, Maps, and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 1 of the '937 Patent.

142.        Google    indirectly    infringes    the    '937    patent    by    inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is

the result of activities performed by the manufacturers, resellers, and end-users of the Google Mobile Communication Devices.  Google received actual notice at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, and further has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

143.    Google provides at least Google Mobile Communication Devices with an operating system configured and installed by Google to support Gallery, Email, Maps and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe the '937 Patent.  Through its manufacture and sales of Google Mobile Communication Devices, Google specifically intended its resellers and manufacturers to infringe the '937 patent.

144.    Google specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 Patent in the United States.  For example, Google provides instructions to resellers and end-use customers regarding the use and operation of Google's products in an infringing way.  Such instructions include at least "Google Nexus Help" (available at https://support.google.com/nexus/?hl=en&topic=2765972#topic=3415518l).    When resellers and end-use customers follow such instructions, they directly infringe the '937 Patent.  Google knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '937 Patent.  Google thus knows that its actions induce the infringement.

145.    Google performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

146.    Google indirectly infringes the '937 patent, by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Mobile Communication Devices.  Google received actual notice of the '937 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, and further has knowledge of its infringement of the Patents-in-Suit by way of this Complaint as of the date this lawsuit was filed.

147.    Google Mobile Communication Devices include functionality that, inter alia, displays a navigable graphical user interface ("navigable GUI") that permits a user to manipulate and control the contents of the display to maximize the use of display real estate.  This navigable GUI is included in Google Mobile Communication Devices with an operating system configured and installed by Google to support at least the Gallery, Email, Maps, and Browser functionalities.  On information and belief, these functionalities cannot operate in an acceptable manner absent the navigable GUI, as it is included in every Google Mobile Communication Device.

148.    A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in Google Mobile Communication Devices is especially made or especially adapted to operate on a Google Mobile Communication Device as a

48

navigable GUI that permits a user to manipulate or control the contents of the display to maximize the use of display real estate on the user's Google Mobile Communication Devices.

149.     A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in the Mobile Communication Device is not a staple article or commodity of commerce and that the use of the navigable GUI in Google Mobile Communication Devices is required for the operation of Google Mobile Communication Devices.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

150.     Google Mobile Communication Devices with the navigable GUI are each a material part of the invention of the '937 patent and are especially made for the infringing manufacture, sale, and use of Google Mobile Communication Devices. Google Mobile Communication Devices with the navigable GUI are especially made or adapted as a navigable GUI that infringes the '937 patent.   Because the sales and manufacture of Google Mobile Communication Devices with a navigable GUI infringes the '937 patent, Google's sales of its infringing products have no substantial non-infringing uses.

151.     Accordingly, a reasonable inference is that Google offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '937 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing uses.   Google

49

provides to others, Google Mobile Communication Devices with distinct and separate components, including software components, which have no substantial non-infringing uses.

152.    At least Google Mobile Communication Devices with an operating system configured and installed to support Message and Notification functionality infringe at least claim 1 of the '131 Patent.  Google makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 1 of the '131 Patent.

153.    Google indirectly infringes the '131 patent by inducing infringement by others, such as resellers, of at least claim 1 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Google Mobile Communication Devices.  Google received actual notice of the '131 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, and further has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

154.    Google's affirmative acts of selling Google Mobile Communication Devices, causing the Google Mobile Communication Devices to be manufactured, and providing instruction manuals for Google Mobile Communication Devices induced Google's manufacturers and resellers to make or use the Google Mobile Communication Devices in their normal and customary way to infringe the '131 patent. Through its manufacture and sales of Google Mobile Communication Devices, Google specifically intended its resellers and manufacturers to infringe the '131 patent; further,

50

Google was aware that these normal and customary activities would infringe the '131 patent.  Google performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

155.        Accordingly, a reasonable inference is that Google specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '131 patent in the United States because Google has knowledge of the '131 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Google Communication Devices for resale to others, such as resellers and end-use customers.  Google knew or should have known that such actions would induce actual infringement.

156.        The use of at least Google Mobile Communication Devices with an operating system configured and installed by Google to support Message and Notification functionality as intended by Google infringes at least method claim 5 of the '131 Patent.  Google uses these products and thus directly infringes at least method claim 5 of the '131 Patent.

157.        In    addition,    Google    provides    at    least    Google    Mobile Communication Devices with an operating system configured and installed by Google to support Message functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 5 of the '131 Patent.

158.        Google indirectly infringes the '131 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Mobile Communication Devices in their intended use, including a customer's use of the Message and Notifications functionality.  Google received actual notice of the '131 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, and further has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

159.        Google's affirmative acts of selling Google Mobile Communication Devices and providing instruction manuals induced the end-users of Google Mobile Communication Devices to use Google Mobile Communication Devices in their normal and customary way to infringe the '131 patent at least through using Message and Notifications functionality.  Google also provides instructions, including at least "Google Nexus Help" available on Google's website at https://support.google.com/nexus/?hl=en&topic=2765972#topic=3415518, for using the Messaging and Notifications functionality.  Through its sales of Mobile Communication Devices with Messaging and Notifications functionality, Google specifically intended the end-users of Google Mobile Communication Devices to infringe the '131 patent; further, Google was aware that the normal and customary use of the Message and Notifications functionality would infringe the '131 patent.  Google also enticed its end-users to use the Messaging and Notifications functionality by providing instruction manuals.  Google performed the acts that constituted induced infringement, and would induce actual

infringement, with the knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

160.        Accordingly, a reasonable inference is that Google actively induces infringement of the '131 Patent by others, such as resellers and end-use customers.  Google specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '131 Patent in the United States because Google had knowledge of the '131 Patent, and Google actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Google Mobile Communication Devices in an infringing way.  Such instructions include at least "Google Nexus Help" available at https://support.google.com/nexus/?hl=en&topic=2765972#topic=3415518.        When resellers and end-use customers follow such instructions, they directly infringe the '131 Patent.  Google knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '131 Patent.  Google thus knows that its actions induce the infringement.

161.        Google indirectly infringes the '131 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Mobile Communication Devices in their intended use, including a customer's use of the Messaging and Notification functionality.  Google received actual notice of the '131 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent

portfolio containing each of the patents asserted herein, and further has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

162.        Google's Message and Notification functionality receives and displays message of different types, such as a phone call, voice mail, text message, or email.  The Message and Notification Services functionality is designed to notify the user of an incoming communication and to select the format of the message received and cannot function in a manner that does not utilize the messaging functionality available to Google Mobile Communication Devices.  Upon information and belief, the Message and Notifications functionality is designed to entice a user to receive notifications of an incoming communication.

163.        A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality especially made or especially adapted to operate on Google Mobile Communication Devices for notifying a user of an incoming communication.

164.        A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality is not a staple article or commodity of commerce and that the use of the Messaging and Notifications functionality of the Google Mobile Communication Devices is for notifying a user of an incoming communication.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

165.        Google Mobile Communication Devices with Messaging and Notifications functionality are each a material part of the '131 patent and especially made for the infringing use of the Messaging and Notification functionality to receive and

54

display messages.  Google Mobile Communication Devices including the Messaging and Notification functionality, are especially made or adapted to notify a user of an incoming communication that perform or facilitate performance of the steps that infringe the '131 patent.  Furthermore, Google provides user manuals describing the uses of its Mobile Communication Devices that infringe the '131 patent.  Because the functionality provided by Google's Messaging and Notification to notify a user of an incoming communication infringes the '131 patent, Google's sales of its infringing products have no substantial non-infringing uses.

166.       Accordingly, a reasonable inference is that Google offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing uses.  Google provides to others, Mobile Communication Devices with an operating system configured and installed by Google to support Message and Notification functionality.  Google installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

167.       At least Google Mobile Communication Devices with an operating system configured and installed by Google to support VPN management functionality, including the Google Galaxy S III, infringe at least claims 1 and 8 of the '591 Patent.  Google makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes

within the United States these devices and thus directly infringes at least claims 1 and 8 of the '591 Patent.

168.        The use of at least Google Mobile Communication Devices with an operating system configured and installed by Google to support VPN management functionality as specified and intended by Google infringes at least claims 1 and 8 of the '591 Patent.  Google uses these products and thus directly infringes at least claims 1 and 8 of the '591 Patent.

169.        Google indirectly infringes the '591 patent by inducing infringement by others, such as resellers, of at least claims 1 and 8 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Google Mobile Communication Devices.  Google received actual notice of the '591 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, and further has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

170.        Google's affirmative acts of selling Google Mobile Communication Devices, causing the Google Mobile Communication Devices to be manufactured, and providing instruction manuals for Google Mobile Communication Devices induced Google's manufacturers and resellers to make or use the Google Mobile Communication Devices in their normal and customary way to infringe the '591 patent. Through its manufacture and sales of Google Mobile Communication Devices, Google specifically intended its resellers and manufacturers to infringe the '591 patent; further, Google was aware that these normal and customary activities would infringe the '591

56

patent.  Google performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

171.    Accordingly, a reasonable inference is that Google specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 patent in the United States because Google has knowledge of the '591 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Google Communication Devices for resale to others, such as resellers and end-use customers.  Google knew or should have known that such actions would induce actual infringement.

172.    In addition, Google provides at least its Mobile Communication Devices with an operating system configured and installed by Google to support VPN management functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least claims 1 and 8 of the '591 Patent.

173.    Google indirectly infringes the '591 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Mobile Communication Devices in their intended use, including a customer's use of the VPN management functionality.  Google received actual notice of the '591 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing

each of the patents asserted herein, and further has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

174.    Google's affirmative acts of selling its Mobile Communication Devices and providing instruction manuals induced the end-users of Google Mobile Communication Devices to use Google Mobile Communication Devices in their normal and customary way to infringe the '591 patent at least through using VPN management functionality.  Google also provides instructions, including at least "Google Nexus Help" available on Google's website at https://support.google.com/nexus/?hl=en&topic=2765972#topic=3415518, for using the VPN management functionality.  Through its sales of Google Mobile Communication Devices with VPN management functionality, Google specifically intended the end-users of Google Mobile Communication Devices to infringe the '591 patent; further, Google was aware that the normal and customary use of VPN management functionality would infringe the '591 patent.  Google also enticed its end-users to use the VPN management functionality by providing instruction manuals.  Google performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

175.    Accordingly, it is a reasonable inference that Google actively induces infringement of the '591 Patent by others, such as resellers and end-use customers.  Google specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 Patent in the United States because Google had knowledge of the '591 Patent, and Google actually induces

infringement by providing instructions to resellers and end-use customers regarding the use and operation of Google's products in an infringing way. Such instructions include at least "Google Nexus Help" available on Google's website at https://support.google.com/nexus/?hl=en&topic=2765972#topic=3415518. When resellers and end-use customers follow such instructions, they directly infringe the '591 Patent. Google knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '591 Patent. Google thus knows that its actions induce the infringement.

176.    Google indirectly infringes the '591 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Google Mobile Communication Devices in their intended use, including a customer's use of the VPN management functionality. Google received actual notice of the '591 Patent at least by April 4, 2011, when it placed its initial bid for the Nortel patent portfolio containing each of the patents asserted herein, and further has knowledge of its infringement of the Patents-in-Suit by way of this Complaint. Google's VPN management functionality facilitates management of VPNs. The VPN management functionality is designed for management of VPNs and cannot function in a manner that does not utilize the VPN management functionality available to Google Mobile Communication Devices. The VPN management functionality is designed upon information and belief to entice a user to manage VPNs.

177.        A reasonable inference to be drawn from the facts set forth is that the VPN functionality is especially made or especially adapted to operate on Google Mobile Communication Devices for providing VPN management functionality.

178.        A reasonable inference to be drawn from the facts set forth is that the VPN management functionality is not a staple article or commodity of commerce and that the use of the VPN management functionality of Google Mobile Communication Devices is for managing VPNs.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

179.        Google Mobile Communication Devices with VPN management functionality are each a material part of the invention of the '591 patent and especially made for the infringing use of the VPN functionality.  Google Mobile Communication Devices including the VPN management functionality, are especially made or adapted to provide VPN management functionality that perform or facilitate performance of the steps that infringe the '591 patent.  Furthermore, Google provides user manuals describing the uses of its Mobile Communication Devices that infringe the '591 patent. Because the functionality provided by Google's VPN management functionality infringes the '591 patent, Google's sales of its infringing Mobile Communication Devices have no substantial non-infringing uses.

180.        Accordingly, a reasonable inference is that Google offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple

article or commodity of commerce suitable for substantial non-infringing uses.  Google provides to others, Mobile Communication Devices with an operating system configured and installed by Google to support VPN management functionality.  Google installs and configures on these products distinct and separate components, including software components, which are used only to infringe the '591 Patent.

181.        Google's acts of infringement have caused damage to Rockstar and MobileStar.  Rockstar and MobileStar are entitled to recover from Google the damages sustained by Rockstar and MobileStar as a result of Google's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of Google have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rockstar and MobileStar for which there is no adequate remedy at law, and for which Rockstar and MobileStar are entitled to injunctive relief under 35 U.S.C. § 283.

182.        Google received actual notice of its infringement of the '937, '131, and '591 Patents through at its April 4, 2011 bid for the  Nortel patent portfolio.  Google also has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

183.        Google has willfully infringed and/or does willfully infringe the '937, '131, and '591 Patents.

## DEMAND FOR JURY TRIAL

Rockstar and MobileStar hereby demand a jury trial for all issues so triable.

## <u>PRAYER FOR RELIEF</u>

61

WHEREFORE, Rockstar prays for the following relief:

1.      A judgment that Samsung has directly infringed the '551 Patent, contributorily infringed the '551 Patent, and/or induced the infringement of the '551 Patent.

2.      A judgment that Samsung has directly infringed the '937 Patent, contributorily infringed the '937 Patent, and/or induced the infringement of the '937 Patent.

3.      A judgment that Samsung has directly infringed the '298 Patent, contributorily infringed the '298 Patent, and/or induced the infringement of the '298 Patent.

4.      A judgment that Samsung has directly infringed the '973 Patent, contributorily infringed the '973 Patent, and/or induced the infringement of the '973 Patent.

5.      A judgment that Samsung has directly infringed the '131 Patent, contributorily infringed the '131 Patent, and/or induced the infringement of the '131 Patent.

6.      A judgment that Samsung has directly infringed the '591 Patent, contributorily infringed the '591 Patent, and/or induced the infringement of the '591 Patent.

7.      A judgment that Samsung has directly infringed the '572 Patent, contributorily infringed the '572 Patent, and/or induced the infringement of the '572 Patent.

8.     A permanent injunction preventing Samsung and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '551 Patent;

9.     A permanent injunction preventing Samsung and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '937 patent;

10.     A permanent injunction preventing Samsung and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '298 patent;

11.     A permanent injunction preventing Samsung and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '973 patent;

12.     A permanent injunction preventing Samsung and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '131 patent;

13.     A permanent injunction preventing Samsung and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and

those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '591 patent;

14.    A permanent injunction preventing Samsung and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '572 patent;

15.    A judgment that Samsung's infringement of the '551, '937, '298, '973, '131, '591, and '572 Patents has been willful;

16.    A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding Rockstar and MobileStar to their attorneys' fees incurred in prosecuting this action;

17.    A judgment and order requiring Samsung to pay Rockstar and MobileStar damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and treble damages for willful infringement as provided by 35 U.S.C. § 284;

18.    A judgment and order requiring Samsung to pay Rockstar and MobileStar the costs of this action (including all disbursements);

19.    A judgment and order requiring Samsung to pay Rockstar and MobileStar pre-judgment and post-judgment interest on the damages awarded;

20.    A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Rockstar and MobileStar be awarded a compulsory ongoing licensing fee against Samsung;

21.    A judgment that Google has directly infringed the '937 Patent, contributorily infringed the '937 Patent, and/or induced the infringement of the '937 Patent.

22.    A judgment that Google has directly infringed the '131 Patent, contributorily infringed the '131 Patent, and/or induced the infringement of the '131 Patent.

23.    A judgment that Google has directly infringed the '591 Patent, contributorily infringed the '591 Patent, and/or induced the infringement of the '591 Patent.

24.    A judgment that Google's infringement of the '937, '131, and '591 Patents has been willful;

25.    A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding Rockstar and MobileStar to their attorneys' fees incurred in prosecuting this action;

26.    A judgment and order requiring Google to pay Rockstar and MobileStar damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and treble damages for willful infringement as provided by 35 U.S.C. § 284;

27.    A judgment and order requiring Google to pay Rockstar and MobileStar the costs of this action (including all disbursements);

28.    A judgment and order requiring Google to pay Rockstar and MobileStar pre-judgment and post-judgment interest on the damages awarded;

29.     A judgment and order requiring that Rockstar and MobileStar be awarded a compulsory ongoing licensing fee as to Google; and

30.     Such other and further relief as the Court may deem just and proper.


DATED:  December 31, 2013.                      Respectfully submitted,
                                                **MCKOOL SMITH, P.C.**

                                                */s/ Theodore Stevenson, III*
                                                Mike McKool, Jr.
                                                Texas Bar No. 13732100
                                                mmckool@mckoolsmith.com
                                                Douglas A. Cawley
                                                Texas Bar No. 0403550
                                                dcawley@mckoolsmith.com
                                                Theodore Stevenson, III
                                                Lead Attorney
                                                Texas State Bar No. 19196650
                                                tstevenson@mckoolsmith.com
                                                David Sochia
                                                Texas State Bar No. 00797470
                                                dsochia@mckoolsmith.com
                                                **MCKOOL SMITH P.C.**
                                                300 Crescent Court, Suite 1500
                                                Dallas, Texas 75201
                                                Telephone: (214) 978-4000
                                                Facsimile: (214) 978-4044

                                                **ATTORNEYS FOR PLAINTIFFS
                                                ROCKSTAR CONSORTIUM US,
                                                LP AND MOBILESTAR
                                                TECHNOLOGIES LLC**

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per L.R. CV-5(a)(3) on December 31, 2013. Any other counsel of record will be served via first-class mail.

/s/ Theodore Stevenson, III
Theodore Stevenson, III