# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC, | § § § | |
| PLAINTIFFS, | § § | |
| v. | § § | Civil Action No. 2:13-cv-00900-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, | § § § § § | JURY TRIAL REQUESTED |
| DEFENDANT. | § § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO GOOGLE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

I.    Introduction ................................................................................................................. 1

II.   Argument ...................................................................................................................... 3

    A.   MobileStar Had Standing When the Original Complaint Was Filed ........................................................................................................ 3

        1.   The Plain Language of § 9.051 Limits Its Application to Texas State Courts ................................................. 4

        2.   State Statutes Cannot Dictate the Jurisdiction of Federal Courts ............................................................................... 4

        3.   A Failure to Register Under the Texas Business Organizations Code Does Not Implicate Standing ...................... 7

    B.   Google's Motion to Dismiss Claim 5 of the '131 Patent Under 35 U.S.C. § 101 Should Be Denied ............................................. 8

        1.   Rule 12(b)(6) Dismissal for Lack of Patent-Eligible Subject Matter Is the Exception, Not the Rule ........................... 8

        2.   The Claims of the '131 Patent Have Not Yet Been Construed ................................................................................... 9

        3.   The Pending Supreme Court Decision in *Alice Corp. v. CLS Bank* Counsels Patience ...................................... 10

        4.   Google Has Not Carried Its Burden of Showing that Claim 5 Is Patent-Ineligible by Clear and Convincing Evidence ......................................................................... 12

    C.   Plaintiffs' Indirect Infringement Pleading Is Sufficiently Detailed, And Google's Motion to Dismiss Those Claims Should Be Denied .................................................................. 14

        1.   Plaintiffs Identify the Class of Accused Products, the Accused Operating System, and the Specific Infringing Functionality ................................................. 15

        2.   Google's Cited Authority Is Inapplicable Here ........................ 17

        3.   Plaintiffs' Contributory Infringement Pleading Permits an Inference that the Accused Devices Have No Substantial Non-Infringing Uses ............................... 19

i

4. If the Court Finds Plaintiffs' Indirect Infringement Allegations Insufficient, It Should Grant Plaintiffs Leave To Re-Plead.........................................................................20

III. Conclusion .................................................................................................................21

McKool 969869v1

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps">**Cases**</span>

*9969 Indus., Inc. v. Sikktoys, LLC.*,
  No. CIV-04-0973-PHX-SMM, 2006 U.S. Dist. LEXIS 2376 (D. Az. 2006)...........................6

*Abraxis Bioscience, Inc. v. Navinta, LLC*,
  625 F.3d 1359 (Fed. Cir. 2010)..........................................................................................6, 7

*Abraxis v. Navinta*,
  672 F.3d 1239 (Fed. Cir. 2011).................................................................................................7

*Achates Reference Publ., Inc. v. Symantec Corp.*,
  No. 2:11-CV-27143, 2013 U.S. Dist. LEXIS 27143
  (E.D. Tex. Jan. 10, 2013) ........................................................................................14, 15, 16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S.Ct. 734 (2013)..........................................................................................................10, 11

*Angel v. Bullington*,
  330 U.S. 183 (1947)....................................................................................................................5

*Bancorp Services, LLC v. Sun Life Assur. Co.*,
  687 F.3d 1266 (Fed. Cir. 2012)...............................................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................14, 18

*Broadcast Music, Inc. v. Lyndon Lanes, Inc.*,
  No. C 84-1003-L(A), 1985 U.S. Dist. LEXIS 15326 (W.D. Ky. 1985) ...................................6

*Bryan v. Kershaw*,
  366 F.2d 497 (5th Cir. 1966) ....................................................................................................4

*buySAFE, Inc. v. Google Inc.*,
  No. 11-1282-LPS, 2013 U.S. Dist. LEXIS 105601
  (D. Del. July 29, 2013)...........................................................................................................3, 9

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
  No. C 12-04182 WHA, 2013 U.S. Dist. LEXIS 9280
  (N.D. Cal. Jan. 22, 2013) ...........................................................................................................9

*Clear with Computers, LLC v. Bergdorf Goodman, Inc.*,
  No. 09-0481, 2010 U.S. Dist. LEXIS 92079 (E.D. Tex. Mar. 29, 2010) .....................9, 17, 18

*Clear With Computers v. Dick's Sporting Goods, Inc.*,
   No. 6:12-cv-00674-LED, Dkt. No. 116
   (E.D. Tex., Jan. 21, 2014)....................................................................9

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
   717 F.3d 1269 (Fed. Cir. 2013)...............................................2, 11, 13

*Coastal Liquids Trans., L.P. v. Harris Co. Appraisal Dist.*,
   46 S.W.3d 880 (Tex. 2001)....................................................................7

*Dietgoal Innovations LLC v. Tyson Foods, Inc.*,
   No. 2:12-cv-338-JRG-RSP (E.D. Tex. Mar. 25, 2013) .........................9

*Durish v. Panan Intern., N.V.*,
   808 S.W.2d 175 (Tex. App.–Houston [14th Dist.] 1991, no writ) ...........8

*Erie R. R. v. Tomkins*,
   304 U.S. 64 (1938)................................................................................5

*Harms v. Tops Music Enters., Inc.*,
   160 F. Supp. 77 (C.D. CA 1958) ...........................................................6

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012)..................................................... passim

*InMotion Imagery Techs., LLC v. Imation Corp.*,
   No. 2:12-cv-298, 2013 U.S. Dist. LEXIS 41830
   (E.D. Tex. Mar. 26, 2013)...............................................................19, 20

*J&J Sports Prods., Inc. v. Humphries Enters., LLC*,
   715 F. Supp. 2d 71 (D.D.C. 2010) .........................................................6

*J&J Sports Prods. v. Roses's Dream, Inc.*,
   818 F. Supp. 2d 1 (D.D.C. 2010) ...........................................................6

*Jane Lyons Advertising, Inc. v. Cook*,
   Civ. A. No. 97-01069, 1998 WL 164775 (D.D.C. Mar. 31, 1998)..........6

*Landsman & Funk PC v. Skinder-Strauss Assoc.*,
   640 F.3d 72 (3rd Cir. 2011) ...................................................................5

*Leo Feist, Inc. v. Young*,
   138 F.2d 972 (7th Cir. 1943) ..................................................................6

*Lisle Mills, Inc. v. Arkay Infants Wear, Inc.*,
   90 F. Supp 676 (E.D.N.Y. 1950) ............................................................6

iv

*Lone Star Document Mgmt., LLC v. Atalasoft, Inc.*,
  No. 2:11-CV-00319, 2012 U.S. Dist. LEXIS 129979
  (E.D. Tex. Sept. 11, 2012) ............................................................................................18

*Lyon v. Quality Courts United, Inc.*,
  249 F.2d 790 (6th Cir. 1957) ...........................................................................................5

*Macrosolve, Inc. v. Geico Ins. Agen., Inc.*,
  No. 6:12-cv-74-MHS-JDL (E.D. Tex. Feb. 5, 2013)........................................................10

*Metro. Paving Co. v. Int'l Union of Operating Eng'rs*,
  439 F.2d 300 (10th Cir. 1971) ..........................................................................................5

*Mims v. Arrow Fin. Svcs.*,
  132 S. Ct 740 (2012)..........................................................................................................5

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  No. C-12-1233-EMC, 2012 U.S. Dist. LEXIS 129396
  (N.D. Cal. Sept. 11, 2012) ................................................................................................9

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*,
  No. 11-0229, 2012 U.S. Dist. LEXIS 114199
  (E.D. Tex. July 27, 2012) ................................................................................................18

*Progressive Cas. Ins. Co. v. Safeco Ins. Co.*,
  No. 1:10-cv-1370, 2010 U.S. Dist. LEXIS 120225
  (N.D. Ohio Nov. 12, 2010) ..............................................................................................10

*Realtime Data, LLC v. Stanley*,
  721 F. Supp. 2d 538 (E.D. Tex. 2010)..............................................................................18

*S&W Enters., LLC v. Southtrust Bank of Ala., NA*,
  315 F.3d 533 (5th Cir. 2003) ..........................................................................................21

*Singer Sewing Machine Co. v. Benedict*,
  229 U.S. 481 (1913)...........................................................................................................4

*Sola Electric Co. v. Jefferson Electric Co.*,
  317 U.S. 173 (1942)...........................................................................................................5

*Stoneeagle Servs., Inc. v. Davis*,
  No. 3:13-cv-894 (N.D. Tex. Aug. 14, 2013)......................................................................10

*Stripling v. Jordan Prod. Co.*,
  234 F.3d 863 (5th Cir. 2000) ..........................................................................................21

*TQP Development, LLC v. Intuit Inc.*,
   2:12-cv-00180-WCB, Dkt. No. 150 (E.D. Tex. Feb. 19, 2014) .......................................13, 14

*Troyan v. Snelling & Snelling, Inc.*,
   524 S.W.2d 432, 1975 Tex. App. LEXIS 2781
   (Tex. Civ. App.–Dallas 1975, no writ) ...............................................................................7, 8

*UbiComm, LLC v. Zappos IP, Inc.*,
   No. 13-cv-1029-RGA, 2013 U.S. Dist. LEXIS 161559
   (D. Del. Nov. 13, 2013) ...........................................................................................8, 9, 12, 13

*Ultramercial, Inc. v. Hulu, LLC*,
   722 F.3d 1335 (Fed. Cir. 2013).................................................................................................9

*United States ex rel. Marcy v. Rowan Cos., Inc.*,
   520 F.3d 384 (5th Cir. 2008) ...................................................................................................21

*Van Steed v. Warrior Capital, LLC*,
   No. CIV-06-348-F, 2007 U.S. Dist. LEXIS 82768 (W.D. Ok. 2007) ......................................6

*Weems v. McCloud*,
   619 F.2d 1081 (5th Cir. 1980) ..................................................................................................4

*Zillow, Inc. v. Trulia, Inc.*,
   No. C12-1549 (W.D. Wash. Sept. 6, 2013 ..............................................................................11

**STATUTES**

17 U.S.C. § 101 *et seq*.............................................................................................................6

35 U.S.C. §§ 100(d) and 281 ....................................................................................................6

35 U.S.C. § 101 ............................................................................................................... passim

35 U.S.C. § 271(b) ...................................................................................................................14

35 U.S.C. § 271(c) ...................................................................................................................15

Fed. R. Civ. P.8(a)(2)...............................................................................................................14

Fed. R. Civ. P. 11 ......................................................................................................................6

Fed. R. Civ. P. 12(b)(1).............................................................................................................1

Fed. R. Civ. P. 12(b)(6).....................................................................................................1, 8, 9

Fed. R. Civ. P. 15(a) ..........................................................................................................20, 21

McKool 969869v1

Fed. R. Civ. P. 16 .................................................................................................21

Tex. Bus. Corp. Act. Art 8.18 ................................................................................7

Texas Business Organizations Code § 9.051 ...................................................1, 2, 4, 7

McKool 969869v1

## I.    INTRODUCTION

In its Motion to Dismiss ("Motion"), Google[1] maintains that (1) MobileStar lacked standing at the time the Original Complaint was filed and therefore the Court lacks jurisdiction under Federal Rule of Civil Procedure 12(b)(1); (2) Plaintiffs cannot support certain counts under Rule 12(b)(6) because claim 5 of U.S. Patent 6,463,131 ("the '131 patent") is allegedly directed to patent-ineligible subject matter under 35 U.S.C. § 101; and (3) Plaintiffs' indirect infringement claims should be dismissed because Plaintiffs did not sufficiently identify the infringing functionality.[2] Google's arguments are inherently flawed, and its Motion should be denied for multiple reasons.

First, Google's entire basis for contesting standing is that a Texas statute that purports to regulate Texas *state* courts, not federal courts, somehow restricts federal jurisdiction in actions under federal law. This conflicts with the plain language of that Texas statute and attacks the most basic foundations of our federal system.  Texas Business Organizations Code § 9.051 requires foreign businesses to register in Texas and restricts access to "court[s] *of this state*"— not courts of the *United States*—until the entity is properly registered.  States lack the power to add requirements to federal law, or to tell the federal judiciary what cases it can hear.  Texas purports to do *neither* here, instead properly dictating only the rules for its own system. Yet Google ignores § 9.051's clear limitation and refuses to acknowledge controlling law which makes clear that state door-closing statutes cannot restrict the jurisdiction of federal courts to hear federal claims.

---

[1] The use of the term "Defendant" or "Google" refers to Defendant Google Inc.

[2] The arguments made in section I of Google's brief incorporate by reference the Samsung's Defendants' Motion to Dismiss.  *See* Dkt. No. 26.  Thus, any citations in sections II.A and II.B to Google's Motion will refer to page numbers of Samsung's Motion to Dismiss.  *See id.*

1

It is undisputed that MobileStar meets all the standing requirements under the federal patent laws, which is all that is necessary to maintain this action. There is no support for Google's contrary proposition that a state statute—especially one textually limited to *state courts*—can rewrite Article III's standing requirements in federal question cases.

In any event, even if § 9.051 could restrict the scope of MobileStar's standing to file a federal patent case—and it assuredly cannot—dismissal is still improper. A failure to register under Texas law is not a standing issue even in Texas state courts, but rather an *affirmative defense* that may be defeated at <u>any</u> time before final judgment by registering with the secretary of state, which MobileStar has now done. If § 9.051 applies at all, its terms have been satisfied.

Second, Google is mistaken: claim 5 of the '131 patent is not directed to patent-ineligible subject matter. Google's Motion misleads the Court by arguing that courts "routinely" analyze patent eligibility under § 101 at the pleadings stage; in fact, however, such dismissals are the exception, not the rule. Courts cannot decide patent-eligibility until it is clear what the patent *means*. The claims of the '131 patent have not yet been construed, and this Court and others have emphasized that claim construction is an important first step in any § 101 analysis. It is pointless to decide, hypothetically, whether Google's preferred construction—which the Court may later *reject*—is impermissibly abstract.

Further, any § 101 analysis would need to be repeated after the Supreme Court finishes its review of the Federal Circuit's divided opinion in *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013). The current standard for patent eligibility under § 101 is murky under *CLS Bank* and may well be overhauled by the Supreme Court's decision. As such, the Court and parties could avoid a significant waste of time and resources by addressing this issue in the ordinary course—and *after* the Supreme Court issues its opinion later this Term.

2

To the extent the Court is inclined to substantively engage Google's § 101 arguments at this stage, Google failed to meet its burden to show that claim 5 is directed to patent-ineligible subject matter.  Google simply isolates claim 5 from the rest of the patent, construes the claim in a manner most favorable to *Google*, and never once analyzes the surrounding claims, the specification, the preferred embodiments, or any other evidence (intrinsic or otherwise) to derive the claim's meaning.  This is not a serious effort to construe the claim, but an apparent attempt to prematurely elicit Plaintiffs' position on claim construction.  Plaintiffs will engage in claim construction at the appropriate time, and the claim, once properly construed, will be shown to cover a specific, concrete implementation.

Lastly, Google's attempt to require Plaintiffs to provide infringement contention- or expert report-level detail regarding its indirect infringement theories at the pleadings stage must fail. For each asserted patent, Plaintiffs identified by name the accused infringing Google devices, the specific operating system, and the particular infringing functionality in more detail than is required by the Federal Circuit and the courts in this District.  Google's Motion should be denied.

## II. ARGUMENT

### A.    MobileStar Had Standing When the Original Complaint Was Filed

At the time it filed its Original Complaint, MobileStar was the owner of five of the patents-in-suit. Rockstar was the owner of the remaining two patents-in-suit, with MobileStar being the exclusive licensee to those patents. Google does not dispute this. Motion at 14. Instead, Google contends that neither Plaintiff had standing to sue because a Texas statute regarding registration (and its effect on Texas's *state courts*) somehow restricts MobileStar's standing to file a federal lawsuit.  Google's argument fails on multiple levels.

3

1.      **The Plain Language of § 9.051 Limits Its Application to Texas State Courts**

Even a cursory review of the Texas statute upon which Google relies reveals the glaring flaw in Google's argument: Section 9.051 of the Texas Business Organizations Code is a matter of Texas state law. Section 9.051 states that "[a] foreign filing entity or the entity's legal representative may not maintain an action, suit, or proceeding *in a court of this state* . . . on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter." TEX. BUS. ORGS. CODE § 9.051 (emphasis added). Thus, on its face, § 9.051 applies only to Texas state court proceedings. Federal district courts, including this Court, are not courts of *any* State; they are courts of the United States, regardless of the particular geographic location in which they may be located. Google's argument is irreconcilable with the plain language of § 9.051 and must be rejected for that reason alone.

2.      **State Statutes Cannot Dictate the Jurisdiction of Federal Courts**

Even if § 9.051 purported to apply to federal proceedings, it is well-established that "[t]he laws of a state cannot enlarge or restrict the jurisdiction of the federal courts." *Weems v. McCloud*, 619 F.2d 1081, 1087 (5th Cir. 1980) (quoting *Markham v. City of Newport News*, 292 F.2d 711, 716 (4th Cir. 1961)); *Singer Sewing Machine Co. v. Benedict*, 229 U.S. 481 (1913) ("The state courts cannot define the equity jurisdiction of the Federal courts . . . .").[3] Google seeks to dismiss this action without citing even one federal case holding that a state door-closing statute can limit the jurisdiction of a *federal court* to preside over a matter involving a *federal*

---

[3] *See also Bryan v. Kershaw*, 366 F.2d 497, 504 n.5 (5th Cir. 1966) (citing *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945) ("State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts."))

*question*.  To the contrary, federal courts have uniformly held that state door-closing statutes simply cannot restrict the jurisdiction of federal courts to hear federal claims.  *See, e.g., Mims v. Arrow Fin. Svcs.*, 132 S. Ct. 740 at 747–48 (2012); *Angel v. Bullington*, 330 U.S. 183, 192 (1947); *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176 (1942).[4]  Granting Google's request would contradict this well-settled line of case law.

Further, the cases offered by Google do not, as Google suggests, stand for the proposition that a Texas statute may deprive federal litigants of standing granted by acts of Congress or the Constitution.  Instead, Google cites one case where a state limited access to its own courts and three cases where federal courts sitting in diversity jurisdiction declined to apply state registration laws to bar *state law* causes of action.  These cases rely on the well-established rule that, "*except* in matters governed by the Federal Constitution or by Acts of Congress," a federal court applies the law of the state. *Erie R. R. v. Tomkins*, 304 U.S. 64, 78 (1938) (emphasis added).  However, "where resort is had to a federal court *not on grounds of diversity of citizenship but because a federal right is claimed*, the limitations upon the courts of a state do not control a federal court sitting in the state." *Angel v. Bullington*, 330 U.S. 183, 192 (1947) (emphasis added).  As a result, federal appellate courts considering state door-closing statutes have uniformly held they cannot bar a federal question claim in federal court.[5]  Likewise, district

---

[4] A more complete listing of cases addressing this issue is found in notes 3 and 4, *infra*.

[5] *E.g.*, *Landsman & Funk PC v. Skinder-Strauss Assoc.*, 640 F.3d 72, 91–92 (3rd Cir. 2011) (*vacated*, rehearing *en banc* ordered in light of *Mims v. Arrow Fin. Svcs.* by 650 F.3d 311 (3rd Cir. 2011) (*en banc*); vacatur *vacated*, panel opinion reinstated to the extent consistent with *Mims* by 2012 U.S. App. LEXIS 11946) (3rd Cir. 2012) (*en banc*)) (holding that state class action door-closing law inapplicable to class action plaintiffs suing in federal court under the TCPA); *Metro. Paving Co. v. Int'l Union of Operating Eng'rs*, 439 F.2d 300, 307 (10th Cir. 1971) (holding that an Oklahoma door-closing statute was inapplicable to a plaintiff pleading a federal question claim); *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790, 793–95 (6th Cir.

courts across the country have consistently recognized that "a party alleging injury recognized by congressional statute necessarily has standing in district court," and that such federally created standing cannot be impaired by state law. *J&J Sports Prods., Inc. v. Humphries Enters., LLC*, 715 F. Supp. 2d 71, 73–74 (D.D.C. 2010).[6]

Indeed, Google's own authority supports the proposition that federal law <u>preempts state law</u> in matters of standing in patent cases. *Abraxis Bioscience, Inc. v. Navinta, LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010). The plaintiff in *Abraxis* had a defective patent assignment at the time of filing that deprived it of standing under 35 U.S.C. §§ 100(d) and 281. *Id*. at 1363–64. The plaintiff effected a retroactive assignment, valid under applicable state law, to perfect title as of the filing date. *Id*. The Federal Circuit held that the state law giving force to the retroactive assignment conflicted with the patent statute's standing requirements, and was therefore

---

1957) (holding that a claim under the Lanham act is not subject to state door-closing statutes); *Leo Feist, Inc. v. Young*, 138 F.2d 972, 973–74 (7th Cir. 1943) (holding that a claim for copyright infringement was not subject to a state law requiring registration to maintain suit).

[6] *See, e.g., J&J Sports Prods. v. Roses's Dream, Inc.,* 818 F. Supp. 2d 1, 3–4 (D.D.C. 2010) (holding that District of Columbia door-closing statute inapplicable to federal question claim brought in federal district court); *Van Steed v. Warrior Capital, LLC*, No. CIV-06-348-F, 2007 U.S. Dist. LEXIS 82768, at *9 (W.D. Ok. 2007) (holding that two state door-closing statutes are irrelevant to federal question claims); *9969 Indus., Inc. v. Sikktoys, LLC.*, No. CIV-04-0973-PHX-SMM, 2006 U.S. Dist. LEXIS 2376, at *9–10 (D. Az. 2006) (denying motion to dismiss federal question and pendent jurisdiction claims for failure to comply with a state door-closing statute; reprimanding counsel for failing to apply the appropriate standard; weighing Rule 11 sanctions against defense counsel); *Jane Lyons Advertising, Inc. v. Cook*, Civ. A. No. 97-01069, 1998 WL 164775, at * 4 (D.D.C. Mar. 31, 1998) (holding that such "door closing statutes" do not restrict federal courts exercising federal question jurisdiction); *Broadcast Music, Inc. v. Lyndon Lanes, Inc.*, No. C 84-1003-L(A), 1985 U.S. Dist. LEXIS 15326, at *1–2 (W.D. Ky. 1985) (holding that a Kentucky door-closing statute could not bar a copyright case under 17 U.S.C. § 101 *et seq.*); *Harms v. Tops Music Enters., Inc.*, 160 F. Supp. 77, 80–81 (C.D. CA 1958) (holding in a copyright case that the state is "powerless to determine the conditions under which a corporation, in a non-diversity case, or in a pendent action, may sue in federal courts"); *Lisle Mills, Inc. v. Arkay Infants Wear, Inc.*, 90 F. Supp 676, 677 (E.D.N.Y. 1950) (holding a door-closing statute inapplicable to a declaratory judgment patent plaintiff on the ground that the plaintiff's complaint pled a federal question).

preempted.  *Id.* at 1364.  In a concurrence in the denial of rehearing en banc, Judge Gajarsa reiterated that federal patent law preempts state law on matters of standing in patent cases. *Abraxis v. Navinta*, 672 F.3d 1239, 1240–41 (Fed. Cir. 2011).  Here, Google invites plain error by requesting a finding that Texas law overrides federal law to deprive MobileStar of standing.

Google's attempt to support its position ignores that the only examples Google could find in which a federal court imported a state requirement involved *diversity jurisdiction*—where federal courts do attempt to apply certain state requirements—and not *federal question jurisdiction*.  States cannot dictate the standing requirements in Article III courts for cases involving federal laws.  That is exclusively a federal domain, which is why Google is forced to ignore entirely the plethora of cases that doom its position.  Even if § 9.051's application were not unmistakably limited to state court, it could not permissibly deprive this Court of jurisdiction over this federal litigation.

### 3. A Failure to Register Under the Texas Business Organizations Code Does Not Implicate Standing

Google overlooks that § 9.051 does not implicate standing at all—not even in state court. The Texas Supreme Court has clarified that the failure of a foreign entity to register in Texas under § 9.051 is not a matter of *standing*, but one of *capacity*.  *Coastal Liquids Trans., L.P. v. Harris Co. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001) (favorably noting lower court decisions holding that "a party can cure a defect in its registration at least until the trial court loses plenary power.").  Specifically, both state and federal courts in Texas have repeatedly found that the failure to register under § 9.051 (or its precursor, Tex. Bus. Corp. Act. Art 8.18) is a substantive defect which may be cured at *any* time prior to entry of final judgment.  *See, e.g., Troyan v. Snelling & Snelling, Inc.*, 524 S.W.2d 432, 1975 Tex. App. LEXIS 2781 (Tex. Civ.

App.–Dallas 1975, no writ) ("[T]he requirements of [the registration statute] were satisfied by presentation of the certificate before entry of final judgment).[7]

It is undisputed that MobileStar registered under Chapter Nine of the Texas Business Organizations Code on December 2, 2013. *See* Dkt. No. 26, at 4 (citing Milowic Dec., Ex. 7). MobileStar's registration application clearly indicates that it was formed on October 30, 2013 (before this suit was filed), intended to transact business beginning on that date, and the registration application included any applicable late fees necessary to remedy a late registration. Under well-settled Texas law, this registration—filed well before the entry of final judgment and, indeed, before Google even responded to the Complaint—cured any technical deficiencies that may have existed when MobileStar brought this action. *See Troyan*, 524 S.W.2d at 435. Google's argument must fail.

**B. Google's Motion to Dismiss Claim 5 of the '131 Patent Under 35 U.S.C. § 101 Should Be Denied**

**1. Rule 12(b)(6) Dismissal for Lack of Patent-Eligible Subject Matter Is the Exception, Not the Rule**

Google's assertion that invalidity under § 101 is "routinely" decided at the pleading stage is inaccurate and misrepresents Google's cited authority. *See* Motion at 5. *UbiComm, LLC v. Zappos IP, Inc.*, the primary case upon which Google relies, makes clear that "it is 'rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter.'" No. 13-1029, 2013 U.S. Dist. LEXIS 161559, at *20 (D. Del. Nov. 13, 2013) (citing *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338–39 (Fed. Cir. 2013)). This is because "the

---

[7] *See also Durish v. Panan Intern., N.V.,* 808 S.W.2d 175, 178–79 (Tex. App.–Houston [14th Dist.] 1991, no writ) (overruling challenge to standing where Plaintiff did not possess business certificate when suit was filed, but registered before the trial court lost its plenary power over the judgment).

McKool 969869v1

*only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility" and because "the analysis under § 101 . . . is rife with underlying factual issues [and] . . . requires a search for limitations in the claims that narrow or tie the claims to specific applications of an otherwise abstract concept." *Ultramercial*, 722 F.3d at 1338–39 (emphasis in original). As such, "Rule 12(b)(6) dismissal for lack of eligible subject matter will be the exception, not the rule." *Id.* at 1339.[8]

### 2. The Claims of the '131 Patent Have Not Yet Been Construed

Similarly, the Court has not yet construed the claims of the '131 patent. Google brushes this aside as irrelevant, while at the same time claiming that specific limitations in Claim 5 fail to "meaningfully limit" the scope of the claim. Motion at 14. Yet, this Court has made clear that "claim construction is an important first step in any § 101 analysis" and "may be necessary to determine whether the patent-in-suit contains patent-eligible subject matter." *See Dietgoal Innovations LLC v. Tyson Foods, Inc.*, No. 2:12-cv-338-JRG-RSP (E.D. Tex. Mar. 25, 2013) (Dkt. No. 59) (denying defendant's motion to dismiss for failure to state a claim based on

---

[8] Google could only identify a handful of exceptions which all involved single patents such that a § 101 ruling was dispositive of the entire litigation. *See Clear With Computers v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-00674-LED, Dkt. No. 116, at 6–7 (E.D. Tex., Jan. 21, 2014); *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-cv-1029-RGA, 2013 U.S. Dist. LEXIS 161559, at *6 (D. Del. Nov. 13, 2013); *see also buySAFE, Inc. v. Google Inc.*, No. 11-1282-LPS, 2013 U.S. Dist. LEXIS 105601, at *1 n.1 (D. Del. July 29, 2013); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233-EMC, 2012 U.S. Dist. LEXIS 129396, at *20 (N.D. Cal. Sept. 11, 2012); *Cardpool, Inc. v. Plastic Jungle, Inc.*, No. C 12-04182 WHA, 2013 U.S. Dist. LEXIS 9280, at *3 (N.D. Cal. Jan. 22, 2013). Here, by contrast, Google is accused of infringing two patents in addition to the '131 patent. *See generally* Dkt. No. 19. Thus, addressing § 101 at this early stage does not offer any unusual efficiencies or resolve this dispute in any meaningful way. In fact, it will not even dispose of a single patent at issue in Google's Motion. As a matter of judicial administration, it makes far more sense to address § 101 once all the claims have been construed and the issue naturally arises in the ordinary course.

unpatentable subject matter).  Other courts reached the same conclusion.  *See, e.g.*, *Macrosolve, Inc. v. Geico Ins. Agen., Inc.*, No. 6:12-cv-74-MHS-JDL (E.D. Tex. Feb. 5, 2013) ("Here, where the claims of unpatentabilty relate directly to the scope and meaning of a claim term, it is not only prudent, but necessary for the Court to conduct claim construction prior to determining the patentability of the subject matter under 35 U.S.C § 101."); *Stoneeagle Servs., Inc. v. Davis*, No. 3:13-cv-894 (N.D. Tex. Aug. 14, 2013) (Dkt. No. 15) ("[C]laim construction will sharpen these issues and offer more than two opposing takes on what the claims mean.  A ruling based on briefing alone without evidence invites pure guesswork. . . . As such, the Court exercises restraint over valor."); *Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 1:10-cv-1370, 2010 U.S. Dist. LEXIS 120225, at *16 (N.D. Ohio Nov. 12, 2010) ("Because the record is inadequate, the Court will not address defendants' specific arguments as to whether the patent meets the machine-or-transformation test or claims an abstract idea.  Accordingly, defendants' motion to dismiss must be denied."); *see also Bancorp Services, LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."). At the very least, disposition of this issue should be deferred until the claims of the '131 patent have been construed, particularly since resolution of Google's Motion now will not even dispose of a single patent.  *See supra* n.6.

3.      **The Pending Supreme Court Decision in *Alice Corp. v. CLS Bank* Counsels Patience**

Even if the Court engaged in a substantive analysis of Google's argument at this stage in the litigation, the issue would almost certainly need to be revisited once the Supreme Court

10

decides *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, where the Court will review the Federal Circuit's splintered decision in *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013). In *CLS Bank*, the en banc Federal Circuit agreed that the method at issue did not claim patent-eligible subject matter under § 101 but disagreed on the proper standard for patentability. *Id.*[9] The Supreme Court granted certiorari, and the case is set for oral argument on March 31, 2014. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 734 (2013).

The Supreme Court's decision in *Alice Corp.* will, at the very least, provide additional guidance that will impact the test for patentability under § 101. It would be a tremendous waste of judicial and party time and resources to grapple with the intricacies of § 101 under the current case law[10] only to repeat the entire analysis after *Alice Corp* is decided.[11] This is particularly true given that waiting provides the added benefit of allowing the Court to address § 101 within the context of an *actual* (and not hypothetical) claim construction.

---

[9] Even CLS Bank, in opposing certiorari, admits that the Federal Circuit lacked a cohesive rule on subject matter eligibility and that the outcomes of cases depend on the composition of the appellate panel rather than the facts of the case. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, Brief of Respondents CLS Bank International, et. al. in Opposition, at 26, S. Ct. Dkt. No. 13-298 (Nov. 6, 2013).

[10] At least one court has noted the difficulty of engaging in a substantive analysis of patentability under § 101 prior claim construction given the disjointed state of the law as articulated by the Federal Circuit in *CLS Bank*. *See Zillow, Inc. v. Trulia, Inc.*, No. C12-1549 (W.D. Wash. Sept. 6, 2013) (Dkt. No. 46) (denying defendant's motion to dismiss without prejudice to refiling following the court's ruling on claim construction, stating "[o]n May 10, 2013, the Federal Circuit issued its en banc decision in *CLS Bank*, affirming the patent ineligibility of the method, computer-readable medium, and system claims at issue in a one-paragraph per curiam decision. *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1273 (Fed. Cir. 2013). Unfortunately, instead of providing the hoped for clarity with respect to the test the court should apply here, the ten-member en banc panel released seven different opinions—none of which garnered majority support.").

[11] Google concedes that *Alice Corp.* will bear directly on this issue, but nevertheless maintains that disposition at this juncture is proper. *See* Motion at 6 n.3.

### 4. Google Has Not Carried Its Burden of Showing that Claim 5 Is Patent-Ineligible by Clear and Convincing Evidence

Google has failed to demonstrate that claim 5 is impermissibly abstract—and, in fact, has not even engaged in any serious effort to determine what claim 5 means. Google's Motion fails to analyze the claim using all the ordinary tools of claim construction. It says nothing about the specification, the neighboring claims, the preferred embodiments, or any of the traditional factors that underscore, concretely, what the claim covers. Instead, Google elected to adopt a superficial construction that construes everything in *Google's* favor, ignoring its heavy burden at this stage. If Google wishes to show that claim 5 fails under § 101, it has to exclude *any* plausible construction of the claim that survives § 101, while identifying an undeniable abstract idea at the right level of generality. Its insubstantial effort to grapple with the claim's meaning suggests Google is more serious about forcing Plaintiffs to take a premature position on claim construction than litigating § 101. Google cannot properly seek to invalidate the patent before its technical limitations are clear. That inadequacy alone is sufficient reason to reject Google's Motion at this juncture.

In addition, in a case of square peg, round hole, Google's efforts to analogize claim 5 of the '131 patent to *UbiComm* fail because the claims at issue address entirely different "fundamental concepts." This error—as a threshold matter—both distinguishes *UbiComm* and confirms that claim 5 is directed to patent eligible subject matter. *See UbiComm,* 2013 U.S. Dist. LEXIS 161559, at *6 (quoting *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013)) ("[T]he court must first identify and define whatever fundamental concept appears wrapped up in the claim."). In *UbiComm*, the Delaware court found the asserted claim unpatentable because its "fundamental concept" was directed to a

generic "conditional action."  Here, Google argues that the fundamental concept of claim 5 is also a simple "conditional action," namely "the conditional action" of "'notifying' a user of a 'communication event' if and when such a 'communication event' occurs."  *See* Motion at 8. This is simply not the case.[12]  Unlike *UbiComm*, claim 5 of the '131 patent is directed to something more than a basic "if-then" logical operation.  A plain reading of claim 5 reveals that its fundamental concept is directed to a specific implementation of allowing *further* notifications based on a series of characteristic determinations and user selections.  By misidentifying the "fundamental concept" of claim 5, Google does not even pass the first prong of the *UbiComm* test.

Even if the fundamental concept of claim 5 was a "conditional action" (and it is not), the claim contains additional limitations that "narrow the claim relative to the fundamental principle therein."  *CLS Bank*, 717 F.3d at 1238.  As Judge Bryson recently explained while sitting by designation in Marshall, even claims directed to the "fundamental concept" of an unpatentable abstract idea, may regain patent eligibility if the claim contains additional limitations on the scope of the invention's basic concept.  *See TQP Development, LLC v. Intuit Inc.,* 2:12-cv-00180-WCB, Dkt. No. 150 (E.D. Tex. Feb. 19, 2014).  Here, claim 5 contains several such limitations, including: "selecting a notification based on the characteristic" and "receiving a selection from the user indicating a format for delivery of further notification information regarding the communication event."  Therefore, even if claim 5 was directed to the basic idea of

---

[12] Taken to its logical conclusion, Google's position would invalidate all claims describing a functional data flow (*e.g.,* receiving data from one source, passing it to another) on the grounds that it necessarily claims a "conditional action."  Again, the test is not whether some portion of the claim contains what is arguably a "conditional action," but whether the "conditional action" is the "fundamental concept" of the invention.

notifying a user of a communication event if and when it occurs, these additional limitations "narrow the claim relative to the fundamental principal therein" in order to regain patent eligibility.  *Id.* (citing *CLS Bank*, 717 F.3d at 1238).

### C. Plaintiffs' Indirect Infringement Pleading Is Sufficiently Detailed, And Google's Motion to Dismiss Those Claims Should Be Denied

Lastly, Google alleges that, for U.S. Patent Nos. 6,037,937 ("the '937 patent) and 6,463,131 ("the '131 patent"), Plaintiffs failed to adequately plead indirect infringement. Google's argument is limited to a complaint that Plaintiffs did not sufficiently identify the "specific accused functionality."  *See* Motion at 6.[13]  This is simply untrue.  Google would have Plaintiffs provide the level of detail found in infringement contentions or even an expert report. Indirect infringement pleadings do not require the level of specificity that Google demands. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("This does not mean, however, that R+L must prove its case at the pleading stage."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .") (internal quotation marks omitted).

What *is* required is that an indirect infringement pleading "contain[] sufficient facts from which the Court may conclude that the claim is plausible."  *See Achates Reference Publ., Inc. v. Symantec Corp.*, No. 2:11-CV-27143, 2013 U.S. Dist. LEXIS 27143, at *7 (E.D. Tex. Jan. 10, 2013).  Specifically, a pleading of inducement under 35 U.S.C. § 271(b) "must contain facts

---

[13] To be clear, Google does not dispute the sufficiency of Plaintiffs' Amended Complaint (Dkt. No. 19) with respect to Plaintiffs' direct infringement allegations.

plausibly showing that [the defendants] specifically intended their customers to infringe the [asserted] patent and knew that the customer's acts constituted infringement." *In re Bill of Lading*, 681 F.3d at 1339. A plaintiff claiming contributory patent infringement under 35 U.S.C. § 271(c) must allege "(1) an act of direct infringement, (2) that the defendant 'knew that the combination for which its components were especially made was both patented and infringing,' and (3) that the components have 'no substantial non-infringing uses.'" *Achates*, 2013 U.S. Dist. LEXIS 27143, at *7 (citing *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005)). Because Plaintiffs' indirect infringement pleading contains "sufficient facts from which the Court may conclude that the claim is plausible," Google's final argument must also be rejected. *See id.*

### 1. Plaintiffs Identify the Class of Accused Products, the Accused Operating System, and the Specific Infringing Functionality

A review of Plaintiffs' indirect infringement pleading is instructive. Plaintiffs' pleading first identifies the specific types of Google products accused of infringement, including identifying many of those devices by name.[14] Dkt. No. 19 at 8 ("Google is . . . making, using, selling, and/or offering for sale . . . certain mobile communication devices . . . including Google's Nexus 5, Nexus 7, Nexus 10, and Galaxy Nexus devices ('Google Nexus Devices')."). Plaintiffs' pleading specifies that these products run "a version (or an adaptation thereof) of Android operating system." *Id.* Plaintiffs' specific allegations of infringement are further enumerated for each asserted patent in detail, ranging from 16 to 17 paragraphs per patent. *See id.* at 45–61.

---

[14] Significantly, Google's Motion fails to mention that Plaintiffs did, in fact, identify specific accused products.

As to the '937 patent, Plaintiffs have described exactly what the accused functionality in Google's accused products is and how Plaintiffs believe it infringes the '937 patent. For example, Plaintiffs identified Google's Mobile Communication Devices as "certain mobile communication devices having a version (or an adaption thereof) of Android operating system ('Google Mobile Communication Devices'), including Google's Nexus 5, Nexus 7, Nexus 10, and Galaxy Nexus devices ('Google Nexus Devices')" which "include functionality that, inter alia, displays a navigable graphical user interface ('navigable GUI') that permits a user to manipulate and control the contents of the display to maximize the use of display real estate. This navigable GUI is included in Google Mobile Communication Devices with an operating system configured and installed by Google to support at least the Gallery, Email, Maps, and Browser functionalities." *Id.* at 46, 48. These words do not merely parrot the claim language as Google suggests; they actually describe, *in detail*, the specific functionality within the accused Google devices which infringes at least claim 13 of the '937 patent. *See id.* Plaintiffs' description of the infringing functionality for the '131 patent is similarly detailed, putting Google on notice of what the accused instrumentalities in Google's accused products are and how Plaintiffs believe they infringe the '131 patents.[15] As the Federal Circuit has found, this level of

---

[15] *See* Dkt. No. 19 at 51, 54 (describing Google's infringement of the '131 patent) ("Google provides at least Google Mobile Communication Devices with an operating system configured and installed by Google to support Message functionality to others. . . . Google's Message and Notification functionality receives and displays message of different types, such as a phone call, voice mail, text message, or email. The Message and Notification Services functionality is designed to notify the user of an incoming communication and to select the format of the message received and cannot function in a manner that does not utilize the messaging functionality available to Google Mobile Communication Devices. Upon information and belief, the Message and Notifications functionality is designed to entice a user to receive notifications of an incoming communication.").

detail is more than sufficient because Plaintiffs are not required to prove their case at the pleading stage. *In re Bill of Lading*, 681 F.3d at 1339.

It is unclear what exactly Google believes is missing from Plaintiffs' pleading. Google does not—and cannot—contend that it does not understand Plaintiffs' infringement allegations for the '937 and '131 patents. Indeed, Google does not dispute the sufficiency of Plaintiffs' direct infringement claims, which identify the <u>same infringing devices and infringement theories</u> as Plaintiffs' indirect infringement claims. Google has been given fair notice of Plaintiffs' indirect infringement claims and cannot tenably argue otherwise.

### 2. Google's Cited Authority Is Inapplicable Here

Google summarily dismisses Plaintiffs' allegations as insufficient with virtually no support, as the cases upon which Google relies are not at all analogous to the facts here. As one example, Google relies on *Clear with Computers, LLC v. Bergdorf Goodman, Inc.*, No. 09-0481, 2010 U.S. Dist. LEXIS 92079 (E.D. Tex. Mar. 29, 2010). But in *Clear with Computers*, the Court found the plaintiff's indirect infringement allegations deficient because they "fail[ed] to identify which claims are indirectly infringed, fail[ed] to identify which methods or systems indirectly infringe, and fail[ed] to identify a direct infringer in reference to its indirect infringement claims." *Id.* at *11–12. Indeed, the whole of the Plaintiff's infringement allegations found to be deficient in *Clear with Computers* was as follows:

> "Upon information and belief, Defendant BERGDORF has been and now is directly, jointly and/or and indirectly infringing, by way of inducing infringement and/or contributing to the infringement of the '739 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by, among other things, methods practiced on various websites (including, but not limited to, www.bergdorfgoodman.com), making and using supply chain methods, sales methods, sales systems, marketing methods, marketing systems, and inventory systems covered by one or more claims of the '739 Patent to the injury of CWC.

17

Defendant BERGDORF is thus liable for infringement of the '739 Patent pursuant to 35 U.S.C. § 271."

*Clear With Computers, LLC v. Bergdorf Goodman, Inc.*, No. 09-0481, 2010 U.S. Dist. LEXIS 92079, at *2–3 (E.D. Tex. Mar. 29, 2010). Similarly, Google cites to *Patent Harbor* in support of its position, but that case is also easily distinguishable. The single paragraph infringement pleading in *Patent Harbor*, which was found to be sufficient for purposes of inducement but not contributory infringement, was as follows:

> "Upon information and belief, Paramount manufactures, uses, sells, offers to sell, authors, and/or distributes DVD and Blu-Ray discs containing movies, television shows or other forms of video entertainment, including, but not limited to, Star Trek. The authoring of the Paramount Corp. DVD and Blue-Ray discs, with their content-addressing features (e.g. illustrated chapter/scene selection) along with the authoring equipment, and/or sale of the authored discs, infringe one or more claims of the '514 Patent. Upon information and believe, Paramount either performs the authoring or directs and controls the authoring through contract."

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 11-0229, 2012 U.S. Dist. LEXIS 114199, at *4 (E.D. Tex. July 27, 2012).[16] Google cannot credibly analogize these threadbare allegations to Plaintiffs' detailed, multi-paragraph indirect infringement allegations. Dkt. No. 9 at 5–8, 19–29. Plaintiffs' pleading identifies the particular class of accused products, the specific operating system, and the particular infringing functionality within that operating system for the '937 and '131 patents. *Id*. This is more than sufficient detail of Plaintiffs' indirect infringement allegations under the relevant authority. *See In re Bill of Lading*, 681 F.3d at 1339; *Twombly*, 550 U.S. at 555.[17]

---

[16] Furthermore, the Court noted in *Patent Harbor* that the plaintiff did not even "meaningfully respond" to the defendant's motion to dismiss. *Patent Harbor*, 2012 U.S. Dist. LEXIS 114199, at *20.

[17] Google also cites to *Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538 (E.D. Tex. 2010), where the plaintiff accused defendant's "data compression products and/or services," and to *Lone Star Document Mgmt., LLC v. Atalasoft, Inc.*, No. 2:11-CV-00319, 2012 U.S. Dist. LEXIS

18

Rather, Plaintiffs' indirect infringement pleading is more akin to the patentee's identification of a narrow functionality appearing on particular products in *InMotion Imagery Techs., LLC v. Imation Corp.*, No. 2:12-cv-298, 2013 U.S. Dist. LEXIS 41830 (E.D. Tex. Mar. 26, 2013).  The patentee in *InMotion* provided even less detail than was given by Plaintiffs, yet the Court upheld the sufficiency of the indirect infringement pleadings.  *See InMotion*, 2013 U.S. Dist. LEXIS 41830, at *17 ("Here, InMotion has alleged that the accused products capable of indexing videos with images that are displayed in windows wherein at least one window displays motion imagery, are especially made and/or adapted for uses that infringe the asserted patents, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.").  Accordingly, Google's complaint about the sufficiency of Plaintiffs' indirect infringement is misplaced.

### 3.  Plaintiffs' Contributory Infringement Pleading Permits an Inference that the Accused Devices Have No Substantial Non-Infringing Uses

Google's only other argument relates specifically to contributory infringement.  In the next-to-last sentence of its brief, Google claims that Plaintiffs' pleading "lacks any details – beyond conclusory allegations – from which the Court can plausibly infer that any components being sold have no substantial non-infringing uses."  Motion at 7 (internal quotation marks omitted).  The Court in *InMotion* specifically addressed this issue:

> Here, InMotion has alleged that the accused products capable of indexing videos with images that are displayed in windows wherein at least one window displays motion imagery, are especially made and/or adapted for uses that infringe the asserted patents, and are not staple articles or commodities of commerce suitable for substantial noninfringing use. Absent a showing in the pleadings to the

---

129979, at *2 (E.D. Tex. Sept. 11, 2012), where the plaintiff named unspecified "systems, services, and/or products" as infringing.  There can be no question that these cases are completely inapplicable here.

contrary that Imation's products do have substantial noninfringing uses, the Court finds InMotion's contributory allegations permit an inference of Imation's contributing to others infringement of InMotion's asserted patents.

*InMotion*, 2013 U.S. Dist. LEXIS 41830, at *17–18; *see also In re Bill of Lading*, 681 F.3d at 1337 ("Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that material or apparatus is material to practicing the invention, has no substantial non-infringing uses, and is known by the party to be especially made or especially adapted for use in an infringement of such patent.").  Plaintiffs have alleged that the accused devices, including the accused functionalities, for the '937 and '131 patents are especially made and/or adapted for uses that infringe the patents and therefore have no substantial non-infringing uses.  *See* Dkt. No. 19 at 49–50, and 54–55.  Because Plaintiffs' pleading meets the standard set by *InMotion*, Google's argument must be rejected. *See InMotion*, 2013 U.S. Dist. LEXIS 41830, at *17–18.

As demonstrated above, Plaintiffs' indirect infringement pleading provides sufficient detail far beyond what is required by the controlling authority.  Plaintiff is not required to provide infringement contention-level detail at this stage as Google requests, and Google's Motion should be denied.

### 4. If the Court Finds Plaintiffs' Indirect Infringement Allegations Insufficient, It Should Grant Plaintiffs Leave To Re-Plead

To the extent the Court finds that dismissal is warranted as to Plaintiffs' indirect infringement allegations, Plaintiffs respectfully request leave to amend their complaint.  Motions for leave to amend a complaint are properly analyzed under Federal Rule of Civil Procedure

20

15(a),[18] which provides that leave should be "freely give[n] . . . when justice so requires." The Fifth Circuit has made clear that Rule 15(a) "evinces a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000). In determining whether to grant leave to amend, a court may consider a number of factors, "including the futility of amending, the party's repeated failure to cure deficiencies by previous amendments, undue delay, or bad faith." *United States ex rel. Marcy v. Rowan Cos., Inc.*, 520 F.3d 384, 392 (5th Cir. 2008). Here, Google cannot credibly argue that any such factors justify denial of Plaintiffs' request for leave to amend. Therefore, should the Court not outright deny Google's Motion with respect to Plaintiffs' indirect infringement claims, the appropriate remedy would be to allow Plaintiffs to amend their complaint.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Google's Motion to Dismiss in its entirety.

---

[18] Because the Court has not yet entered a scheduling order, the "good cause" standard for modifying pleadings under Rule 16 does not apply here. *See S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (Rule 16(b) requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.").

McKool 969869v1

DATED:  February 28, 2014

Respectfully submitted,

**McKOOL SMITH, P.C.**

*/s/ Theodore Stevenson, III*
Mike McKool, Jr.
Texas Bar No. 13732100
mmckool@mckoolsmith.com
Douglas A. Cawley
Texas Bar No. 0403550
dcawley@mckoolsmith.com
Theodore Stevenson, III
Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
**MCKOOL SMITH P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Joshua W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
**MCKOOLSMITH P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone:    (512) 692-8700
Facsimile:    (512) 692-8744

**ATTORNEYS FOR PLAINTIFFS
ROCKSTAR CONSORTIUM US, LP and
MOBILESTAR TECHNOLOGIES LLC**

22

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the forgoing document via email this 28th day of February, 2014.

*/s/ David Sochia*
David Sochia

McKool 969869v1