**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| | § | |
| ROCKSTAR CONSORTIUM US LP, INC., | § | |
| AND MOBILESTAR TECHOLOGIES, | § | |
| LLC, | § | |
| | § | |
| *Plaintiff*, | § | CASE NO. 2:13-CV-00894-JRG |
| | § | |
| *v.* | § | **LEAD CASE** |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., *et* | § | CASE NO. 2:13-CV-00900-JRG |
| *al.*, | § | |
| | § | **MEMBER CASE** |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Samsung Electronics Co., Ltd.'s, Samsung Electronics America, Inc.'s, and Samsung Telecommunications America, LLC's (collectively, "Samsung") Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) (Dkt. No. 26), filed February 10, 2014. Samsung argues, first, that the Court should dismiss one of Plaintiffs' patent infringement claims on the basis that the subject matter of the claim is unpatentable. Next, Samsung argues that Plaintiff Mobilestar Technologies lacks standing to sue in this Court because it failed to register as a foreign corporation doing business in Texas, and that Plaintiffs' entire claim must therefore be dismissed. For the reasons set forth below, the Court is of the opinion that the Motion should be **DENIED**.

1

## I.      FACTUAL BACKGROUND

This is a suit for patent infringement under 35 U.S.C. § 271. Plaintiffs allege that Defendants infringe seven of its patents with mobile devices using Defendant Google, Inc.'s Android operating system. Among other claims, Plaintiff alleges violation of U.S. Patent No. 6,463,131 ("the '131 Patent"). Claim 5 of the '131 Patent recites:

> A method of notifying a user of an incoming communication event, comprising:
>
> > determining a characteristic of the communication event;
> >
> > selecting a notification based on the characteristic;
> >
> > sending the user the selected notification;
> >
> > receiving a selection from the user indicating a format for delivery of further notification information regarding the communication event; and
> >
> > allowing the further notification information regarding the communication event to be sent to the user in the selected format.

'131 Patent at 10:4-14.

Plaintiff Mobilestar Technologies, LLC ("Mobilestar") is a wholly owned subsidiary of Plaintiff Rockstar Consortium, LP, Inc. ("Rockstar") and was formed by its parent as a Delaware limited liability corporation the day before Plaintiffs filed suit in this action. Texas law requires foreign entities to register with its Secretary of State and to maintain its registration while transacting business in the state. TEX. BUS. & ORGS. CODE § 9.001. Though this suit was filed in the United States District Court for the Eastern District of Texas on October 31, 2013, Mobilestar did not register with the Texas Secretary of State until December 2, 2013.

Texas law also states that:

> A foreign filing entity or the entity's legal representative may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of

action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter.

TEX. BUS. & ORGS. CODE § 9.051.

## II.   STANDING

### A.  Legal Standards

A court must dismiss an action if it determines, at any time, that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Standing to sue is a constitutional requirement and a threshold jurisdictional issue. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010).

> To demonstrate standing under Article III, the plaintiff must satisfy three elements. First, the plaintiff must allege that it has suffered an "'injury in fact'— an invasion of a legally protected interest." Second, "there must be a causal connection between the injury and the conduct complained of." And third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

*Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Because the Patent Act provides that "A patentee shall have remedy by civil action for infringement of his patent," 35 U.S.C. § 281, a plaintiff in a suit for patent infringement typically has standing as long as it demonstrates that it "held enforceable title to the patent at the inception of the lawsuit." *Paradise Creations*, 315 F.3d at 1309.

In Federal Court, the capacity of a "corporation" to sue or be sued is determined by the law under which the corporation was organized. Fed. R. Civ. P. 17(b). For all other parties, capacity to sue is determined by the law of the state where the court is located, except that "a partnership or other unincorporated association with no such capacity under that state's law may

sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." *Id.*

### B.  Analysis

Samsung argues that, at the time of the filing of this suit, Mobilestar lacked the capacity under Texas law to sue in the United States District Court for the Eastern District of Texas, and that the Court should therefore dismiss this case for lack of subject matter jurisdiction.

As an initial matter, the Court notes that it is not at all clear, from the plain language of the Texas Business and Organizations Code, that Texas *does* require foreign entities to register before pursuing a federal cause of action in federal court. Section 9.051 provides that an unregistered foreign entity may not sue "in a court of this state . . . on a cause of action that arises out of the transaction of business in this state." The most natural reading of this statute is that the registration requirement is limited to *state* causes of action. Though a federal court may be "a court of this state" when sitting in diversity jurisdiction or otherwise applying state law, *see Radio WHKW, Inc. v. Yarber*, 838 F.2d 1439, 1443 (5th Cir. 1988) (dictum), it is hard to see how a *federal* court adjudicating an action arising out of *federal* law can be considered a Court "of" the State of Texas. Samsung's proffered interpretation is cast into further doubt in light of Texas Business and Organizations Code § 9.251(9), which distinguishes "transacting business in interstate commerce" from transacting business "in this state," suggesting that the state law requirements are generally respectful of the autonomy of federal jurisdiction.

Notwithstanding the above, the Court does not by this opinion undertake an interpretation of the Texas statute, since doing so is unnecessary here. Even if Texas law *does* purport to prohibit Mobilestar from suing in federal court, Mobilestar nonetheless has standing to sue for patent infringement and this Court has subject matter jurisdiction over the case.

4

Plaintiffs rest their argument on the Supremacy Clause of the Constitution and the broad axiom that "[t]he laws of a state cannot enlarge or restrict the jurisdiction of the federal courts." *Weems v. McCloud*, 619 F.2d 1081, 1087 (5th Cir. 1980) (quoting *Markham v. City of Newport News*, 292 F.2d 711, 716 (4th Cir. 1961). This is true on its face, of course. Plaintiffs' argument in this context, however, is an oversimplification to some extent. Though state law may not restrict federal jurisdiction, federal jurisdiction may nonetheless *depend* on state law. For instance, if state law limits the available recovery in a state cause of action to $50,000, a federal court will not have diversity jurisdiction over a single count of such a claim.

Seen in the best light, then, Samsung's argument is that Mobilestar must have authority to sue under Texas law *before* the Court even arrives at the question of whether Plaintiffs' cause of action arises under federal law. Though framed as a question of standing, the issue is really Mobilestar's *capacity* to sue—whether it is an entity properly able to suffer an injury and obtain a remedy in federal court.

An entity's capacity to sue in federal court is governed by Federal Rule of Civil Procedure 17(b). Under this Rule, a corporation's capacity to sue or be sued is determined by the law under which the corporation was organized; for all other entities, such capacity is determined by the law of the state where the court is located, *except that* "a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b).

The Court need not determine whether a limited liability company organized in Delaware is treated as a "corporation" for Rule 17(b) purposes or as an "unincorporated association." Under Delaware law, an LLC may sue and be sued in its own name, regardless of the cause of

5

action. *See* DEL. CODE ANN. tit. 6 § 18-106 (2010). If the court must treat an LLC as an unincorporated association, then it has capacity to sue "in its common name to enforce a substantive right existing under the United States Constitution or laws" even if Texas law would otherwise deny the association's capacity to sue. Fed. R. Civ. P. 17(b). In either case, Mobilestar has the capacity to sue for patent infringement in this Court.

## III.    PATENTABLE SUBJECT MATTER

### A.  Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but the facts pled must, when accepted as true, state a claim for relief that is "plausible on its face," i.e., the facts pled must allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

Whether a patent claims patent-eligible subject matter under 35 U.S.C. § 101 is a question of law for the Court to decide. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012). Thus, if "the *only* plausible reading of the patent [is] that there is clear and convincing evidence of ineligibility," the Court may invalidate the patent's claims on a motion under Rule 12(b)(6). *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013). If there are

factual disputes about the patent's claims, however, the question of patentable subject matter should be reserved until claim construction. *See id.*

A patent is available under 35 U.S.C. § 101 for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." These terms are to be given "wide scope," but they exclude three categories of subject matter—"laws of nature, physical phneomena, and abstract ideas." *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010). These three categories cover concepts that are "part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none." *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948). These exceptions, however, are to be construed narrowly, to avoid excluding "unanticipated inventions" that might not be foreseen in the coverage language of § 101. *Ultramercial*, 722 F.3d at 1342.

Courts have long wrestled with the task of distinguishing patentable processes from ineligible abstract ideas. The Federal Circuit has adopted a "machine or transformation" test that, while "a useful and important clue . . . is not the sole test for deciding whether an invention is a patent-eligible 'process.'" *Bilski*, 130 S. Ct. at 3227. Rather, because "technology without anchors in physical structures and mechanical steps simply defy easy classification," a more granular inquiry is often warranted to determine whether "the claim, as a whole, includes *meaningful* limitations restricting it to an application, rather than a mere abstract idea." *Ultramercial*, 722 F.3d at 1343.

### B. Analysis

In many cases it is difficult to distinguish between an abstract idea and its application. This is not such a case, nor is any claim construction necessary before deciding the issue here. Defendants argue that Claim 5 of the '131 Patent claims "the abstract idea of notifying a user of

'an incoming communication event.'" This is, on its face, a claim with "meaningful limitations." *See Ultramercial*, 722 F.3d at 1343. Moreover, even a casual reading of the claim reveals that its claims a process more limited than simply "notifying a user."

First, "[a] method of notifying a user of an incoming communication event," is inherently limited to the sphere of application rather than abstraction. "A method of notification" requires a physical act in the world—delivery of some form of notification to a user. Moreover, the limitation of the claim to "an incoming communication event" clearly articulates a bounded universe of applications for the claimed process. Accordingly, even if the claim is as broad as Defendants claim, it does not reach so far into abstraction as to be unpatentable.

Second, the claim itself is clearly narrower than Defendants suggest. Though the claimed steps of "determining a characteristic of the communication event," "selecting a notification based on the characteristic," and "sending the user the selected notification" might be said (in the absence of interpretive context) to be inherent in the abstract idea of communication, the claimed steps of "receiving a selection from the user indicating a format for delivery of further notification information" and "allowing the further notification information . . . to be sent to the user in the selected format" clearly articulate a process that is meaningfully limited relative to the abstract idea of notification. Such requires particular input from a user relating to the format of further notifications, followed by the availability of the selected format. This two-way communicative process is hardly inherent in the abstract idea of notification.

Defendants are incorrect in arguing that Claim 5 of the '131 patent claims unpatentable subject matter.

## IV.      CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have standing and capacity to bring the present suit, and that Claim 5 of the '131 patent does not claim unpatentable subject matter under 35 U.S.C. § 101. Accordingly, Defendants' Motion (Dkt. No. 26) should be and hereby is **DENIED** in all respects.

**So ORDERED and SIGNED this 15th day of May, 2014.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

9